IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

DIAMOND STATE INSURANCE
COMPANY

CASE NO.:
DIVISION:

          Plaintiff,

vs.

HIS HOUSE, INC. d/b/a HIS HOUSE
CHILDREN'S HOME and JOSSALYN D.
CRAWFORD and MICHAEL A. COLEY,
Personal Representatives of the Estate of
M.C., a Minor Decedent,



FILED by _____ D.C.

JAN 0 7 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

          Defendants.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

COMES NOW, the Plaintiff, DIAMOND STATE INSURANCE COMPANY (hereinafter referred to as "DIAMOND STATE") by and through undersigned counsel and hereby files this action against the Defendants, HIS HOUSE, INC. d/b/a HIS HOUSE CHILDREN'S HOME (hereinafter "HIS HOUSE"), and JOSSALYN D. CRAWFORD and MICHAEL COLEY, as Personal Representatives of the Estate of M.C., a Minor Decedent (hereinafter "the ESTATE") for declaratory relief and would state as follows:

## JURISDICTIONAL ALLEGATIONS

1.     Plaintiff, DIAMOND STATE, is an Indiana Company, incorporated in Indiana and organized and existing under the laws of Indiana with its principal place of business in Pennsylvania.

1

2.    Defendant, HIS HOUSE, is a Florida non-profit corporation organized and existing under the laws of Florida with its principal place of business in Opa-Locka, Florida.

3.    Defendants, JOSSALYN D. CRAWFORD and MICHAEL COLEY, as Personal Representatives of the Estate of M.C., a Minor Decedent, at all material times hereto, were residents of Broward County, Florida.

4.    This Court has jurisdiction of the subject matter of this dispute pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and the damages at issue are in excess of $75,000.00 exclusion of interest and costs.

5.    The current action is brought pursuant to 28 U.S.C. § 2201 and Chapter 86 of the Florida Statutes and seeks declaratory relief regarding DIAMOND STATE'S obligations to HIS HOUSE under a Professional Liability policy and a Commercial General Liability policy issued to HIS HOUSE by DIAMOND STATE for an underlying lawsuit by the ESTATE against HIS HOUSE and others.

6.    Venue is appropriate in this district pursuant to 28 U.S.C § 1391 as HIS HOUSE resides in this judicial district, the policies were issued in this judicial district and the underlying tort claim occurred in this district.

**UNDERLYING LITIGATION**

7.    JOSSALYN D. CRAWFORD and MICHAEL COLEY, as Personal Representatives of the Estate of M.C., a Minor Decedent commenced a wrongful death action against HIS HOUSE and others that is pending in the

2

Seventeenth Judicial Circuit, Broward County, Florida, Case No. 09-02544 CA 25. Such action shall be referred to as the Underlying Action. The Complaint for Wrongful Death shall be referred to as the Underlying Complaint and the First Amended Complaint for Wrongful Death shall be referred to as the Underlying Amended Complaint. Copies of the Underlying Complaint and Underlying Amended Complaint are attached hereto as Composite Exhibit "A". The claims alleged by the ESTATE against HIS HOUSE in the Underlying Complaint are identical to the claims alleged against HIS HOUSE in the Underlying Amended Complaint.

8.    The Underlying Amended Complaint alleges that M.C. died on or about February 15, 2007 and that M.C. is survived by her natural parents, JOSSALYN D. CRAWFORD and MICHAEL A. COLEY.

9.    The Underlying Amended Complaint also alleges that M.C. was removed from JOSSALYN CRAWFORD'S home and placed in protective custody and control of Department of Children and Families – Broward (hereinafter referred to as "DCF") on or about February 6, 2007.

10.   The Underlying Amended Complaint alleges that DCF - Broward filed a "Dependency Shelter Petition" on February 7, 2007 supporting the removal of M.C. from the home of JOSSALYN D. CRAWFORD.

11.   The Underlying Amended Complaint further alleges that M.C. was placed in the custody and control of Childnet, Inc. by DCF - Broward on or about February 6, 2007.

3

12.     The Underlying Amended Complaint then alleges that M.C. was placed in the custody and control of Our Kids of Miami-Dade/Monroe, Inc. (hereinafter referred to as "Our Kids") by Childnet, Inc. on or about February 6, 2007.

13.     The Underlying Amended Complaint alleges that M.C. was placed in the custody and control of HIS HOUSE by DCF - Miami and/or Our Kids on or about February 6, 2007.

14.     The Underlying Amended Complaint then alleges that HIS HOUSE owed a duty to M.C. acting in its capacity as *loco parentis.*

15.     The Underlying Amended Complaint alleges that Kristen Glaspy was the foster care mother caring for the decedent, M.C., at all times material to the death of M.C.

16.     The Underlying Amended Complaint further alleges that Kristen Glaspy, at all times material hereto, was an employee and/or agent of HIS HOUSE.

17.     The Underlying Amended Complaint also alleges that Kristen Glaspy knew or should have known that M.C. was congested for the 24 hours preceding her death.

18.     The Underlying Amended Complaint further alleges that Kristen Glaspy negligently cared for and/or supervised the infant, including negligently wrapping M.C. in a blanket.

19.     The Underlying Amended Complaint alleges that Kristen Glaspy last fed M.C. at 12:00 a.m. on February 15, 2007 and last saw her alive at 12:30 a.m. on February 15, 2007.

20. The Underlying Amended Complaint alleges that Kristen Glaspy found M.C. deceased at 5:17 a.m. on February 15, 2007.

21. The Underlying Amended Complaint further alleges that M.C. was found dead, leaning forward on her side, with the blanket completely covering her nose and mouth and the cause of death of M.C. was suffocation by the blanket.

22. The Underlying Amended Complaint further alleges that M.C. died at Landmark Shelter, Building 6A, 20000 N.W. 47th Avenue, Opa Locka, Florida 33055, which is owned and/or operated by HIS HOUSE.

23. Count IV of the Underlying Amended Complaint alleges that at all times material hereto, HIS HOUSE owed a duty of care to protect the health, safety and welfare of M.C.

24. Count IV also alleges that HIS HOUSE had the responsibility and duty to ensure that all contractors and/or employees with whom it placed the infant were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge and to ensure that its contractors and/or employees had appropriate facilities for M.C. and that the facilities had safe and age appropriate clothing, supplies, and other materials for each child while in the custody and care of HIS HOUSE.

25. Count IV further alleges that HIS HOUSE knew of should have known that its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and materials for the care of M.C. and that its contractors and/or employees were not safely preparing M.C. for bed.

26.    Count IV alleges that HIS HOUSE knew or should have known that its contractors and/or employees were loosely wrapping infants in blankets covering the mouth and/or nose of the infants and that the same could result in death or suffocation and that the practice of its contractors and/or employees of loosely wrapping infants in blankets posed unreasonable risk of harm or death to infants placed in the custody and care of HIS HOUSE.

27.    Count IV alleges that as a direct, foreseeable and proximate result of HIS HOUSE'S negligence, JOSSALYN D. CRAWFORD and MICHAEL COLEY, as individuals for and behalf of the ESTATE have experienced severe mental pain and suffering from M.C.'S death, loss of capacity for enjoyment of life, loss of decedent's companionship, protection and services, funeral expenses, loss of net accumulation and loss of earnings.

28.    Count V of Underlying Amended Complaint alleges that at all times material hereto, HIS HOUSE had custody, control and dominion over M.C. and accepted responsibility and owed a duty of care to protect the health, safety, welfare and supervision of the decedent, M.C.

29.    Count V further alleges that Kristen Glaspy was acting for, upon, and in furtherance of the business of her employer, HIS HOUSE, and within the scope of her employment.

30.    Count V alleges that HIS HOUSE is vicariously liability for its employees' wrongful, reckless and/or negligent actions.

31.    Count V also alleges that HIS HOUSE'S employee, Kristen Glaspy, was improperly trained and that Kristen Glaspy negligently cared for, treated and supervised the decedent causing M.C. to suffer death by suffocation.

32.    Count V alleges that Kristen Glaspy's action(s) at all times material hereto were wrongful, reckless and/or negligent and served as the legal cause of M.C.'S fatal injuries, pain, suffering and death.

33.    Count V alleges that as a direct, foreseeable and proximate result of the negligence of Kristen Glaspy, a HIS HOUSE employee, JOSSALYN D. CRAWFORD and MICHAEL COLEY, as individuals for and on behalf of the ESTATE have experienced severe mental pain and suffering from M.C.'S death, loss of capacity for enjoyment of life, loss of decedent's companionship, protection and services, funeral expenses, loss of net accumulation and loss of earnings.

34.    Count VI of the Underlying Amended Complaint alleges HIS HOUSE had the responsibility of custody and care for M.C. and other infants pursuant to a contract with DCF, Childnet, Inc. and/or Our Kids.

35.    Count VI of the Underlying Amended Complaint alleges HIS HOUSE knew of should have known that failure to train and supervise its agents and/or employees could have resulted in the harm suffered by M.C. and HIS HOUSE'S indifference to the substantial risk posed by its failure to train, supervise and/or monitor its agents and/or employees resulted in the suffocation death by M.C.

36.     Count VI alleges that as a direct, foreseeable and proximate result of the of HIS HOUSE'S failure to supervise, train and/or monitor its agents and/or employees in this matter, JOSSALYN D. CRAWFORD and MICHAEL COLEY, as individuals for and on behalf of the ESTATE have experienced severe mental pain and suffering from M.C.'S death, loss of capacity for enjoyment of life, loss of decedent's companionship, protection and services, funeral expenses, loss of net accumulation and loss of earnings.

## PROFESSIONAL LIABILITY POLICY

37.     DIAMOND STATE issued a Professional Liability policy to HIS HOUSE for the policy period of June 30, 2008 to June 30, 2009, Policy No. SSB0583939 (hereinafter referred to as the "Professional Liability policy"). A copy of the Professional Liability policy is attached hereto as Composite Exhibit "B".

38.     The Professional Liability policy issued to HIS HOUSE by DIAMOND STATE provides professional liability coverage in the amount of $1,000,000.00 per claim/$3,000,000.00 aggregate and has a retroactive date of October 22, 2003.

39.     The Professional Liability policy provides professional liability coverage pursuant to an insuring agreement which states:

> SECTION   I   –   PROFESSIONAL   LIABILITY COVERAGE
>
> 1.     Insuring Agreement
>
>> We will pay those sums that the insured becomes legally obligated to pay as "compensatory damages" as a result of a "wrongful act". This insurance applies to injury only if a "claim" for damages to which no other insurance applies, because of the injury is first made against the insured and reported to us during the "policy period". This insurance

8

does not apply to injury caused by a "wrongful act" that takes place outside of the "covered territory" or was committed before the Retroactive Date shown in the Declarations or after the "policy period".

a.  A "claim" by a person or organization seeking damages will be deemed to have been made when notice of such "claim" is received and recorded by the insured or by us, which ever comes first;

b.  All "claims" arising out of the same "wrongful act" will be considered to have been made at the time the first "claim" is made; and

c.  We will have the right and duty to select counsel and to defend any "suit" seeking damages. However, we will have no duty to defend the insured against any "suit" seeking damages for injury to which this insurance does not apply. But:

(1)  The amount we will pay for damages is limited as described in SECTION IV-LIMITS OF INSURANCE;

(2)  We may, at our discretion, investigate any "wrongful act" and settle any "claims" or "suit" that may result; and

(3)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section II – "Claims" Expenses and Defense Costs.

40.  The professional liability coverage of the Professional Liability policy is subject to the following relevant exclusions:

2.  Exclusions

This insurance does not apply to:

9

. . .

    s.    Any "claim", "suit" or "wrongful act" that might result in a "claim" or "suit", of which any insured had knowledge or could have reasonably foreseen, at the signing date of the application for this insurance.

41.    The following relevant definitions are applicable to the professional liability coverage under the Professional Liability policy:

SECTION VI – DEFINITIONS

. . .

4.    "Claim" means a written demand upon the insured for "compensatory damages", including, but not limited to, the service of "suit" or institution of arbitration proceedings against the insured. "Claim" includes reports of accidents, acts, errors, occurrences, offenses or omissions which may give rise to a "claim" under this policy. "Claims" based on or arising out of the same act or interrelated acts of one or more insured will be considered to be based on a single "wrongful act".

12.    "Wrongful act" means any act, error or omission in the furnishing of professional social services. It includes the furnishing of food, beverages, medications or appliances in connection with those services. All "wrongful acts" committed in the furnishing of professional social services to any one person will be considered one "wrongful act". All interrelated "wrongful acts" of one or more insured will be considered one "wrongful act".

42.    HIS HOUSE is seeking coverage for the underlying claims, Underlying Complaint and/or Underlying Amended Complaint under the Professional Liability policy and DIAMOND STATE.

## COMMERCIAL GENERAL LIABILITY POLICY

43.    DIAMOND STATE issued a Commercial General Liability policy to HIS HOUSE for the policy period of June 30, 2008 to June 30, 2009, Policy No.

SSB0583939 (hereinafter referred to as the "Commercial General Liability policy"). A copy of the Commercial General Liability policy is attached hereto as Composite Exhibit "B".

44.    The Commercial General Liability policy issued to HIS HOUSE by DIAMOND STATE provides bodily injury liability coverage in the amount of $2,000,000.00 each occurrence/$4,000,000.00 general aggregate.

45.    The Commercial General Liability policy provides bodily injury liability coverage pursuant to an insuring agreement which states:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.   This insurance applies to "bodily injury" and "property damage" only if:

(1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)   The "bodily injury" or "property damage" occurs during the policy period; and

(3)   Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by an insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    e.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

46.    HIS HOUSE is seeking coverage for the underlying claims, Underlying Complaint and/or Underlying Amended Complaint under the Commercial General Liability policy and DIAMOND STATE has issued a reservation of rights to HIS HOUSE while pursuing this declaratory action.

47.    HIS HOUSE is covered for these claims under a policy issued by LEXINGTON INSURANCE COMPANY ("LEXINGTON") who had general liability coverage for HIS HOUSE during the time period in which this incident took place.

48.    LEXINGTON is defending the Underlying Amended Complaint under the terms of its policy.

## COUNT I – DECLARATORY RELIEF AS TO THE PROFESSIONAL

## LIABILITY POLICY

49.    Plaintiff, DIAMOND STATE realleges and incorporates by reference allegations 1-48 as if stated verbatim herein.

50.    The Professional Liability policy provides coverage for an insured that becomes legally obligated to pay compensatory damages as a result of a wrongful act.

51.    Further, the term "wrongful act" is defined under the Professional Liability policy as any act, error or omission in the furnishing of professional social services, including the furnishing of food, beverages, medications or appliances in connection with those services.

52.    The Underlying Complaint alleges that M.C.'S death resulted from improper swaddling of the infant causing the blanket to suffocate the infant.

53.    Swaddling or the wrapping of an infant in a blanket is not a professional service.

54.    Therefore, improper or negligent swaddling of an infant does not qualify as a wrongful act under the Professional Liability policy issued by DIAMOND STATE.

55.    Thus, coverage has not been triggered under the Professional Liability policy because the improper or negligent swaddling or wrapping of an infant in a blanket does not qualify as a wrongful act under the Professional Liability policy.

56.    The Professional Liability policy issued to HIS HOUSE by DIAMOND STATE makes clear that coverage provided under the policy applies to injury only if a claim for damages to which no other insurance applies because of the injury is first made against the insured and reported to DIAMOND STATE during the policy period.

57.    The term "claim" is defined under the Professional Liability policy issued by DIAMOND STATE as a written demand upon the insured for compensatory damages, but not limited to the service of a suit or institution of arbitration proceedings.

58.    Additionally, the term "claim" is further defined under the Professional Liability policy to include reports of accidents, acts, errors, occurrences, offenses or omission which may give rise to a claim under the policy.

59.    M.C. died on or about February 15, 2007 and DIAMOND STATE issued the Professional Liability policy on June 30, 2008.

60.    HIS HOUSE had separate Professional Liability and Commercial General Liability policies from LEXINGTON, then New Hampshire Insurance Company, prior to DIAMOND STATE'S policy.

61.    To the extent the death of the infant resulted from an act, error or omission in the furnishing of a professional nature, these preceding professional policies would be applicable.

62.    Further, the commercial general liability coverage issued to HIS HOUSE by LEXINGTON applies to this claim and LEXINGTON is defending.

63. The professional liability coverage provided in the Professional Liability policy issued by DIAMOND STATE has not been triggered because other insurance or coverage is available to HIS HOUSE.

64. Additionally, the Professional Liability policy issued by DIAMOND STATE contains an exclusion for any claim, suit or wrongful act that might result in a claim or suit which any insured had knowledge or could have reasonably foreseen, at the signing date of the application for this insurance.

65. HIS HOUSE completed the application for insurance with DIAMOND STATE on June 30, 2008.

66. HIS HOUSE had knowledge of the death of M.C. and placed its agent and prior insurance carriers, New Hampshire Insurance Company and/or Lexington Insurance Company, on notice of the death of M.C. prior to June 30, 2008.

67. To the extent the acts of HIS HOUSE are considered a wrongful act, HIS HOUSE was certainly aware that such wrongful act resulting in the death of an infant by suffocation might result in a claim.

68. HIS HOUSE had knowledge and could have reasonably foreseen a claim would be brought at the signing date of the application for DIAMOND STATE Insurance.

69. Further, HIS HOUSE received a request for insurance information from the ESTATE prior to June 30, 2008, the signing date for the DIAMOND STATE application of insurance.

70.     Therefore, bodily injury liability coverage under the Professional Liability policy is precluded because HIS HOUSE had knowledge or could have reasonably foreseen the claim or suit brought by the ESTATE for the death of M.C. at the signing date of the application for Professional Liability insurance with DIAMOND STATE.

71.     The Underlying Complaint and policy language demonstrate that DIAMOND STATE has no duty to defend HIS HOUSE for the claims made by the ESTATE.

72.     While no coverage applies under the DIAMOND STATE policy, any coverage that would be found to apply under the DIAMOND STATE policy would be excess over the coverage in the LEXINGTON commercial general liability policy and the LEXINGTON and/or NEW HAMPSHIRE professional policies.

73.     The Underlying Amended Complaint and policy language are clear that DIAMOND STATE has no duty to defend or indemnify HIS HOUSE for the claims made by the ESTATE.

74.     The parties dispute the interpretation of the relevant provisions of the Professional Liability policy and whether DIAMOND STATE has a duty to defend or indemnify HIS HOUSE with respect to the Underlying Complaint and/or the Underlying Amended Complaint.

75.     As the parties are in dispute as to the coverage afforded under the Professional Liability policy, this action is appropriate for determination by the Court.

WHEREFORE, Plaintiff, DIAMOND STATE, hereby requests that this Court declare the rights of the parties under the Professional Liability policy issued to HIS HOUSE and enter an Order ruling that DIAMOND STATE has no duty to defend or indemnify HIS HOUSE for the claims made by JOSSALYN D. CRAWFORD and MICHAEL COLEY, as Personal Representatives of the Estate of M.C., a Minor Decedent with respect to the Underlying Complaint and/or Underlying Amended Complaint and award any other relief which this Court deems just and appropriate.

## COUNT II – DECLARATORY RELIEF AS TO THE COMMERCIAL GENERAL LIABILITY POLICY

76.     Plaintiff, DIAMOND STATE realleges and incorporates by reference allegations 1-48 as if stated verbatim herein.

77.     The Commercial General Liability policy issued by DIAMOND STATE to HIS HOUSE applies to bodily injury caused by an "occurrence" and only if the bodily injury occurs during the policy period.

78.     Under the Commercial General Liability policy, the term "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

79.     The term "bodily injury" is defined as bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time under the Commercial General Liability policy.

80.      The Commercial General Liability policy issued by DIAMOND STATE has a policy period of June 30, 2008 to June 30, 2009.

81. The death of M.C. allegedly caused by improper swaddling occurred on February 15, 2007.

82. There is no bodily injury liability coverage provided under the Commercial General Liability policy issued to HIS HOUSE by DIAMOND STATE because the bodily injury occurred prior to the policy period.

83. Further, HIS HOUSE knew of the incident and the death of M.C. prior to the inception of the DIAMOND STATE policy.

84. Although swaddling an infant is not a professional service, any damages from a professional service are included under the terms of the policy.

85. HIS HOUSE had a Commercial General Liability policy with LEXINGTON which provides coverage for this loss and LEXINGTON is defending HIS HOUSE in the underlying action.

86. Therefore, coverage under the Commercial General Liability policy issued by DIAMOND STATE to HIS HOUSE is precluded because M.C.'s death from the alleged negligent swaddling occurred prior to DIAMOND STATE policy period.

87. The Underlying Complaint and policy language demonstrate that DIAMOND STATE has no duty to defend HIS HOUSE for the claims made by the ESTATE.

88. The Underlying Amended Complaint and policy language are clear that DIAMOND STATE has no duty to defend HIS HOUSE for the claims made by the ESTATE.

89. Where there is no duty to defend, there can be no duty to indemnify.

90.     The parties dispute the interpretation of the relevant provisions of the Commercial General Liability policy and whether DIAMOND STATE has a duty to defend or indemnify HIS HOUSE with respect to the Underlying Complaint and/or the Underlying Amended Complaint.

91.     As the parties are in dispute as to the coverage afforded under the Commercial General Liability policy, this action is appropriate for determination by the Court.

WHEREFORE, Plaintiff, DIAMOND STATE, hereby requests that this Court declare the rights of the parties under the Professional Liability policy and Commercial General Liability policy issued to HIS HOUSE and enter an Order ruling that DIAMOND STATE has no duty to defend or indemnify HIS HOUSE for the claims made by JOSSALYN D. CRAWFORD and MICHAEL COLEY, as Personal Representatives of the Estate of M.C., a Minor Decedent and award any other relief this Court deems appropriate.

Respectfully Submitted,

_Colleen Elrod_

**John D. Russell, Esquire**
Florida Bar No: 0050271
**Colleen Elrod, Esquire**
Florida Bar No.: 0043777
**WILLIAMS SCHIFINO MANGIONE & STEADY, P.A.**
P.O. Box 380
Tampa, FL 33601
(813) 221-2626
Fax No: (813) 221-7335
jrussell@wsmslaw.com
Attorneys for Plaintiff

# Exhibit "A"

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
BROWARD COUNTY, FLORIDA

CASE NO.: **09    02544**

ESTATE OF M.C., minor decedent,
JOSSALYN D. CRAWFORD, and
MICHAEL A. COLEY,

      Plaintiffs,

vs.

CHILDNET, INC., HIS HOUSE, INC.,
OUR KIDS OF MIAMI-DADE/MONROE,
INC., and STATE OF FLORIDA,
DEPARTMENT OF CHILDREN AND FAMILIES

      Defendants.

_____/



**25**

A TRUE COPY
JAN 1 4 2009
HOWARD C. FORMAN
CLERK OF CIRCUIT COURT
BROWARD COUNTY, FL

## COMPLAINT FOR WRONGFUL DEATH

COME NOW, the Plaintiffs, Estate of M.C. and JOSSALYN D. CRAWFORD
(natural mother), and MICHAEL A. COLEY (natural father), as Personal Representatives
for The Estate of M.C., A Deceased Minor, and JOSSALYN D. CRAWFORD and
MICHAEL A. COLEY as individuals, and sue the Defendants, CHILDNET, INC., HIS
HOUSE, INC., OUR KIDS OF MIAMI-DADE/MONROE, INC., and the STATE OF
FLORIDA, DEPARTMENT OF CHILDREN AND FAMILIES, pursuant to F.S. § 46.021
F.S. § 768 *et seq.*, by and through the undersigned counsel and allege:

## JURISDICTION AND VENUE

1.    That this is an action for damages in excess of the jurisdictional limits of this
Court, exclusive of costs.

Received Time Jan.21. 2009  5:51PM No. 1848

21/01 2009 15:56 FAX 9547635412

2.  Plaintiffs have satisfied all conditions precedent, including statutory notice requirements, prior to bringing this action, and/or same have otherwise been discharged.

3.  The decedent, Madison Ariel Coley was born on or about January 10, 2007. See Exhibit 1.

4.  Her natural mother was and is Jossalyn Demtrail Crawford. See Exhibit 1.

5.  Her natural father was and is Michael Antwan Coley. See Exhibit 1.

6.  M.C. died on or about February 15, 2007. See Exhibit 2.

7.  Plaintiffs, JOSSALYN D. CRAWFORD (natural mother), and MICHAEL A. COLEY, are the duly appointed personal representatives of the Estate of MADISON COLEY, minor decedent. A copy of the Order Appointing Personal Representatives is attached hereto and incorporated herein by reference. Exhibit 3.

8.  Decedent is survived by her natural mother, Jossalyn D. Crawford; natural father, Michael A. Coley; brother, Bobby Crawford; brother, Brice Brown; and brother, Michael Coley, Jr.

9.  The beneficiaries of the recovery in this action are JOSSALYN D. CRAWFORD and MICHAEL A. COLEY the natural parents of the decedent, M.C.; the decedent's listed siblings, and/or the Estate of M.C.

10. JOSSALYN D. CRAWFORD and MICHAEL A. COLEY the natural parents of the decedent, are sui juris.

11. JOSSALYN D. CRAWFORD and MICHAEL A. COLEY the natural parents of the decedent, are the representatives of the Estate of M.C. See Exhibit 3.

12. At all times material to this action the Plaintiffs, JOSSALYN D. CRAWFORD, MICHAEL A. COLEY, all siblings of the decedent, and M.C., the minor decedent, were and are residents of Broward County, Florida.

13. CHILDNET, INC. is a Florida non-profit corporation, formed under the laws of the State of Florida, with its principal place of business being Broward County, Florida, and authorized to do business in Broward County and is otherwise sui juris.

14. HIS HOUSE, INC. is a Florida non-profit corporation, formed under the laws of the State of Florida, with its principal place of business being Miami-Dade County, Florida, and authorized to do business in Miami-Dade County and is otherwise sui juris.

15. OUR KIDS OF MIAMI-DADE MONROE, INC. is a Florida non-profit corporation, formed under the laws of the State of Florida, with its principal place of business being Miami-Dade, Florida, and authorized to do business in Miami-Dade and Monroe counties and is otherwise sui juris.

16. The State of Florida, Florida Department of Children and Families (hereinafter referred to as DCF, DCF Miami and/or DCF Broward) is an agency or subdivision of the State of Florida operating in Broward County, Florida by and through District 10 and in Miami-Dade, Florida by and through District 11.

Page 3 of 42

## GENERAL ALLEGATIONS

17.  Defendant, The State of Florida, failed to comply with the requirements of F.S. §39.521 *et seq.*

18.  M.C. was removed from JOSSALYN CRAWFORD'S home and placed in the protective custody and control of DCF Broward on or about February 6, 2007.

19.  DCF owed a duty of care to M.C. acting in its capacity as in *loco parentis.*

20.  M.C. was placed in the custody and control of CHILDNET, INC. by DCF Broward on or about February 6, 2007.

21.  CHILDNET, INC. owed a duty of care to M.C. acting in its capacity as in *loco parentis.*

22.  DCF Broward filed a "Dependency Shelter Petition" on February 7, 2007 supporting the removal of M.C. from the home of JOSSALYN CRAWFORD.

23.  M.C. was placed in the custody and control of OUR KIDS OF MIAMI-DADE/MONROE, INC. by CHILDNET, INC. on or about February 6, 2007.

24.  OUR KIDS OF MIAMI-DADE/MONROE, INC. owed a duty of care to M.C. acting in its capacity as in *loco parentis.*

25.  M.C. was placed in the custody and control of HIS HOUSE, INC. by DCF Miami and/or OUR KIDS OF MIAMI-DADE/MONROE, INC. on or about February 6, 2007.

26.  HIS HOUSE, INC. owed a duty of care to M.C. acting in its capacity as in *loco parentis.*

27. Kristen Glaspy was the foster care mother caring for the decedent, M.C., at all times material to the death of M.C.

28. Kristen Glaspy, at all times material hereto, was an employee and/or agent of HIS HOUSE, INC.

29. Kristen Glaspy knew or should have known that M.C. had been congested for the 24 hours preceding her death.

30. Kristen Glaspy negligently cared for and/or supervised the infant, including negligently wrapping M.C. in a blanket.

31. Upon information and belief, Kristen Glaspy last fed M.C. at 12:00am on February 15, 2007 and last saw her alive at 12:30am on February 15, 2007.

32. Upon information and belief, Kristen Glaspy found M.C. deceased at 5:17am on February 15, 2007.

33. M.C. was found dead, leaning forward on her side, with the blanket completely covering her nose and mouth.

34. The cause of death of M.C. was suffocation by blanket.

35. All defendants and HIS HOUSE, INC. in particular knew or should have known of a risk of serious harm or death to an infant in loosely wrapping an infant in a blanket and/or covering the infant's nose and mouth and defendants recklessly disregarded that risk.

36. M.C. experienced great physical and mental pain and suffering for a period of time prior to her death by suffocation.

Received Time Jan. 21. 2009 5:51PM No. 1848

37. Upon information and belief M.C. died at Landmark Shelters, Building 6A, 20000 N.W. 47th Avenue, Opa Locka, Florida 33055.

38. Upon information and belief Landmark Shelters is owned and/or operated by HIS HOUSE, INC.

39. Plaintiffs reserve and preserve their right to amend this Complaint to include a claim for punitive damages pursuant to Florida Statutes 768.72; Porter v. Ogden, 241 F.3d 1334, C.A. 11(Fla.), 2001 and all applicable Florida Rules of Civil Procedure.

## COUNT I-WRONGFUL DEATH: CHILDNET, INC.

40. Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set forth in its entirety below.

41. At all times material hereto, CHILDNET, INC. exercised dominion over the infant, assuming custody and control of the minor decedent, M.C.

42. At all times material hereto, CHILDNET, INC. upon exercising dominion over the child owed a duty of care to protect the health, safety, and welfare of the minor decedent, M.C.

43. At all times material hereto, CHILDNET, INC. breached its duty of care by:

    a. Negligently placing M.C. outside of its jurisdiction in to the care and custody of OUR KIDS OF MIAMI-DADE /MONROE, INC. and/or HIS HOUSE INC;

    b. Failing to properly supervise the care of the decedent;

    c. Failing to properly train individuals to care for the decedent;

Page 6 of 42

d.   Failing to properly diagnose the decedent's medical condition;

e.   Failing to properly treat the decedent;

f.   Failing to discharge its statutory and common law duty to protect the decedent; and

g.   Failing to establish sufficient protocols for the care and supervision of the decedent.

44.   CHILDNET, INC. had the responsibility and duty to insure that all contractors and/or employees with whom they placed the infant were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

45.   CHILDNET, INC. had the responsibility and duty to insure that its contractors had appropriate facilities for M.C. and that the facilities had safe and age appropriate clothing, supplies, and other materials for each child while in the custody and control of CHILDNET, INC.

46.   CHILDNET, INC. had the responsibility and duty to insure that it had sufficient staff to properly supervise and monitor the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its contractors and/or employees; and insure the proper training of its contractors and/or employees in the delivery of care to infants accepted in the custody and care of CHILDNET, INC.

47.   CHILDNET, INC. knew or should have known that its contractors and/or employees were negligently caring for and supervising the children placed in

Page 7 of 42

their custody and specifically were negligent in their supervision and care of the minor infant.

48. CHILDNET, INC. knew or should have known that it its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

49. CHILDNET, INC. knew or should have known that its contractors and/or employees were not safely preparing M.C. for bed.

50. CHILDNET, INC. knew or should have known that its contractors and/or employees were loosely wrapping infants in a blanket covering the mouth and/or nose of the infant and that same could result in death by suffocation.

51. CHILDNET, INC. knew or should have known that the practice of its contractors and/or employees of loosely wrapping an infant in a blanket posed unreasonable risk of harm or death to infants placed in the custody and care of CHILDNET, INC.

52. CHILDNET, INC. knew or should have known that its failure to train, supervise, and/or monitor its contractors and/or employees could have resulted in the harm suffered by M.C.

53. That as a result of Defendant's negligence Plaintiffs Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship,

protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

54. That as a result of Defendant's negligence Plaintiff the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

55. That as a direct, foreseeable and proximate result of CHILDNET, INC.'s negligence, surviving siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; loss of net accumulations. These damages are permanent and continuing in nature

WHEREFORE, the Plaintiffs demand judgment against the Defendant, CHILDNET, INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT II-VICARIOUS LIABILITY: CHILDNET, INC.

56. Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set forth in its entirety below.

57. At all times material hereto, CHILDNET, INC. exercised dominion over the infant assuming custody, control and supervision of the minor decedent, M.C.

Page 9 of 42

58. At all times material hereto, CHILDNET, INC. accepted responsibility for the health, safety, welfare and supervision of decedent, M.C.

59. At all times material hereto, CHILDNET, INC. owed a duty of care to protect the health, safety, and welfare of the minor decedent, M.C.

60. At all times material hereto, HIS HOUSE, INC., and/or its agents and employees, were acting for, upon, and in furtherance of the business of its employer and/or contracting agent and within the scope of its employment and/or contract.

61. HIS HOUSE, INC. provides residential services for the placement of infants/children within Miami by and through its contract with CHILDNET, INC., DCF and/or OUR KIDS OF MIAMI-DADE/MONROE, INC.

62. CHILDNET, INC. placed M.C. with HIS HOUSE, INC. by and through DCF and/or OUR KIDS OF MIAMI-DADE/MONROE, INC.

63. CHILDNET, INC. is vicariously liable under the doctrine of *Respondeat Superior* for wrongful, reckless and/or negligent actions of OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC.

64. CHILDNET, INC.'s employees and/or contractors, OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC. wrongful, reckless and/or negligent actions were the legal cause of M.C.'s fatal injuries, pain and suffering and death.

65. The negligence of CHILDNET, INC.'s employees and/or contractors, OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC. were the direct and

Page 10 of 42

proximate cause of the serious personal injuries sustained by the decedent and directly and proximately resulted in M.C.'s death.

66. That as a direct, foreseeable and proximate result of CHILDNET, INC.'s employees and/or contractors, OUR KIDS OF MIAMI-DADE/MONROE, INC.'s and/or HIS HOUSE, INC.'s, negligence, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

67. That as a direct, foreseeable and proximate result of CHILDNET, INC.'s employees and/or contractors, OUR KIDS OF MIAMI-DADE/MONROE, INC.'s and/or HIS HOUSE, INC.'s, negligence, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

68. That as a direct, foreseeable and proximate result of CHILDNET, INC.'s employees and/or contractors, OUR KIDS OF MIAMI-DADE/MONROE, INC.'s and/or HIS HOUSE, INC.'s, negligence, surviving siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; loss of net accumulations. These damages are permanent and continuing in nature.

WHEREFORE, the Plaintiffs demand judgment against Defendant, CHILDNET, INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

### COUNT III-FAILURE TO SUPERVISE: CHILDNET, INC.

69.    Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set forth in its entirety below.

70.    CHILDNET, INC. exercised dominion over the infant assuming the responsibility of custody, care and supervision of M.C.

71.    CHILDNET, INC. had the responsibility and duty to insure that all contractors and/or employees with whom they placed the infant were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

72.    CHILDNET, INC. had the responsibility and duty to protect the safety, health, and welfare of M.C. and all infants in its care.

73.    CHILDNET, INC. had the responsibility and duty to insure that its contractor's had appropriate facilities for M.C. and that the facilities had safe and age appropriate clothing, supplies, and other materials for each child while in the custody and control of CHILDNET, INC.

74.    CHILDNET, INC. had the responsibility and duty to insure that it had sufficient staff to properly supervise and monitor the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its contractors and/or employees; and insure the proper training of its contractors and/or

Page 12 of 42

employees in the delivery of care to infants accepted in the custody and care of CHILDNET, INC.

75.     CHILDNET, INC. knew or should have known that its contractors and/or employees were negligently caring for and supervising the children placed in their custody and specifically were negligent in their supervision and care of the minor infant.

76.     CHILDNET, INC. knew or should have known that it its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

77.     CHILDNET, INC. knew or should have known that its contractors and/or employees were not safely preparing M.C. for bed.

78.     CHILDNET, INC. knew or should have known that its contractors and/or employees were loosely wrapping infants in a blanket covering the mouth and/or nose of the infant and that same could result in death by suffocation.

79.     CHILDNET, INC. knew or should have known that the practice of its contractors and/or employees of loosely wrapping an infant in a blanket posed unreasonable risk of harm or death to infants placed in the custody and care of CHILDNET, INC.

80.     CHILDNET, INC. knew or should have known that its failure to train, supervise, and/or monitor its contractors and/or employees could have resulted in the harm suffered by M.C.

Received Time Jan. 21. 2009  5:51PM No. 1848

81.     CHILDNET, INC.'s indifference to the substantial risk posed by its failure to train, supervise and/or monitor its agents and/or employees resulted in the suffocation death of M.C.

82.     That as a direct, foreseeable and proximate result of CHILDNET, INC.'s failure to supervise, train and/or monitor its agents and/or employees in this matter, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

83.     That as a direct, foreseeable and proximate result of CHILDNET, INC.'s, failure to supervise, train and/or monitor its agents and/or employees in this matter, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

84.     That as a direct, foreseeable and proximate result of CHILDNET, INC.'s, failure to supervise, train and/or monitor its agents and/or employees in this matter, surviving siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; loss of net accumulations. These damages are permanent and continuing in nature.

WHEREFORE, the Plaintiffs demand judgment against Defendant, CHILDNET, INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT IV-WRONGFUL DEATH: HIS HOUSE, INC.

85.　Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set forth in its entirety below.

86.　At all times material hereto, HIS HOUSE, INC. exercised dominion over the infant assuming custody and control of the minor decedent, M.C.

87.　At all times material hereto, HIS HOUSE, INC. owed a duty of care to protect the health, safety, and welfare of the minor decedent, M.C.

88.　At all times material hereto, HIS HOUSE, INC. breached its duty of care by:

　　a.　*Negligently accepting placement of M.C., from outside of its jurisdiction, into its care and custody from OUR KIDS OF MIAMI-DADE /MONROE, INC., DCF, and/or CHILDNET, INC;*

　　b.　Failing to properly supervise the care of the decedent;

　　c.　Failing to properly train individuals to care for the decedent;

　　d.　Failing to properly diagnose the decedent's medical condition;

　　e.　Failing to properly treat the decedent;

　　f.　Failing to discharge its statutory and common law duty to protect the decedent; and

Page 15 of 42

g.  Failing to establish sufficient protocols for the care and supervision of the decedent.

87.  HIS HOUSE, INC. had the responsibility and duty to insure that all contractors and/or employees with whom they placed the infant were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

88.  HIS HOUSE, INC. had the responsibility and duty to insure that its contractor's and/or employees had appropriate facilities for M.C. and that the facilities had safe and age appropriate clothing, supplies, and other materials for each child while in the custody and control of HIS HOUSE, INC.

89.  HIS HOUSE, INC. had the responsibility and duty to insure that it had sufficient staff to properly supervise and monitor the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its contractors and/or employees; and insure the proper training of its contractors and/or employees in the delivery of care to infants accepted in the custody and care of HIS HOUSE, INC.

90.  HIS HOUSE, INC. knew or should have known that its contractors and/or employees were negligently caring for and supervising the children placed in their custody and specifically were negligent in their supervision and care of the minor infant.

91.  HIS HOUSE, INC. knew or should have known that it its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

Page 16 of 42

92. HIS HOUSE, INC. knew or should have known that its contractors and/or employees were not safely preparing M.C. for bed.

93. HIS HOUSE, INC. knew or should have known that its contractors and/or employees were loosely wrapping infants in a blanket covering the mouth and/or nose of the infant and that same could result in death by suffocation.

94. HIS HOUSE, INC. knew or should have known that the practice of its contractors and/or employees of loosely wrapping an infant in a blanket posed unreasonable risk of harm or death to infants placed in the custody and care of HIS HOUSE, INC.

95. HIS HOUSE, INC. knew or should have known that its failure to train, supervise, and/or monitor its contractors and/or employees could have resulted in the harm suffered by M.C.

96. As a result of HIS HOUSE, INC.'s breach of its duty of care, an employee and/or agent of HIS HOUSE INC. caused the death of M.C.

97. The negligence of HIS HOUSE, INC., as set forth above, was the direct and proximate cause of the serious personal injuries sustained by the decedent and directly and proximately resulted in M.C.'s death.

98. That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s negligence, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral

expenses; loss of net accumulations. These damages are permanent and continuing in nature.

99.     That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s negligence, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

100.    That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s negligence, surviving siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; loss of net accumulations. These damages are permanent and continuing in nature.

WHEREFORE, the Plaintiffs demand judgment against Defendant, HIS HOUSE, INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT V-VICARIOUS LIABILITY: HIS HOUSE, INC.

101.    Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set forth in its entirety below.

102.    At all times material hereto, HIS HOUSE, INC. had custody and control of the minor decedent, M.C.

103.    At all times material hereto, HIS HOUSE, INC. exercised dominion over the infant.

Page 18 of 42

104. At all times material hereto, HIS HOUSE, INC. accepted responsibility for the health, safety, welfare and supervision of decent, M.C.

105. At all times material hereto, HIS HOUSE, INC. owed a duty of care to protect the health, safety, and welfare of the minor decedent, M.C.

106. At all times material hereto, Kristen Glaspy, was acting for, upon, and in furtherance of the business of her employer, HIS HOUSE, INC., and within the scope of her employment.

107. HIS HOUSE, INC. is vicariously liable for its employees' wrongful, reckless and/or negligent actions.

108. HIS HOUSE, INC.'s employee, Kristen Glaspy, was improperly trained; and she negligently cared for, treated and supervised the decedent, causing M.C. to suffer death by suffocation.

109. HIS HOUSE, INC.'s employee, Kristen Glaspy's action(s) at all times material hereto was wrongful, reckless and/or negligent; serving as the legal cause of M.C.'s fatal injuries, pain and suffering and death.

110. The negligence of HIS HOUSE, INC.'s employee, Kristen Glaspy, as set forth above, was the direct and proximate cause of the serious personal injuries sustained by the decedent and directly and proximately resulted in M.C.'s death.

111. That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s employee, Kristen Glaspy's, negligence, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of

capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

112. That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s, employee, Kristen Glaspy's, negligence, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

113. That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s, employee, Kristen Glaspy's, negligence, surviving siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; loss of net accumulations. These damages are permanent and continuing in nature.

WHEREFORE, the Plaintiffs demand judgment against Defendant, HIS HOUSE, INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT VI-FAILURE TO SUPERVISE: HIS HOUSE, INC.

114. Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set forth in its entirety below.

115. HIS HOUSE INC. accepted the responsibility of custody and care of M.C. and other infants pursuant to a contract with DCF, CHILDNET, INC., and/or OUR KIDS OF MIAMI-DADE/MONROE, INC.

116. HIS HOUSE, INC. had the responsibility and duty to insure that all agents and/or employees were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

117. HIS HOUSE, INC. had the responsibility and duty to protect the safety, health, and welfare of M.C. and all infants in its care while preparing M.C. and all other infants for bed.

118. HIS HOUSE, INC. had the responsibility and duty to insure that its facilities had safe and age appropriate clothing, supplies, and other materials for each child during their stay with HIS HOUSE, INC.

119. HIS HOUSE, INC. had the responsibility and duty to insure that it had sufficient staff to properly supervise the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its agents and/or employees; and properly train its agents and/or employees in the delivery of care to infants accepted in the custody and care of HIS HOUSE, INC.

120. HIS HOUSE, INC. knew or should have known that it did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

121. HIS HOUSE, INC. knew or should have known that its agents and/or employees were not safely preparing M.C. for bed.

Page 21 of 42

122. HIS HOUSE, INC. Knew or should have known that loosely wrapping an infant in a blanket could result in the blanket covering the mouth and/or nose of the infant resulting in death by suffocation.

123. HIS HOUSE, INC. knew or should have known that the practice of its agents and/or employees of loosely wrapping an infant in a blanket was widespread and posed unreasonable risk of harm or death to infants placed in the custody and care of HIS HOUSE, INC.

124. HIS HOUSE, INC. knew or should have known that failure to train and supervise its agents and/or employees could have resulted in the harm suffered by M.C.

125. HIS HOUSE, INC.'s indifference to the substantial risk posed by its failure to train, supervise and/or monitor its agents and/or employees resulted in the suffocation death of M.C.

126. That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s failure to supervise, train and/or monitor its agents and/or employees in this matter, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

127. That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s, failure to supervise, train and/or monitor its agents and/or employees in this matter, the

Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

128.   That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s, failure to supervise, train and/or monitor its agents and/or employees in this matter, surviving siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; loss of net accumulations. These damages are permanent and continuing in nature.

WHEREFORE, the Plaintiffs demand judgment against Defendant, HIS HOUSE, INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

### COUNT VII-WRONGFUL DEATH: OUR KIDS OF MIAMI-DADE/MONROE, INC.

129.   Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set forth in its entirety below.

130.   At all times material hereto, OUR KIDS OF MIAMI-DADE/MONROE, INC. exercised dominion over the infant assuming custody and control of the minor decedent, M.C.

131.   At all times material hereto, OUR KIDS OF MIAMI-DADE/MONROE, INC. owed a duty of care to protect the health, safety, and welfare of the minor decedent, M.C.

Page 23 of 42

a.   At all times material hereto, OUR KIDS OF MIAMI-DADE/MONROE, INC.
     breached its duty of care by: Negligently accepting custody and control of
     M.C. from outside of its jurisdiction and negligently placing M.C. outside of
     its jurisdiction into the care and custody of HIS HOUSE, INC;

b.   Failing to properly supervise the care of the decedent;

c.   Failing to properly train individuals to care for the decedent;

d.   Failing to properly diagnose the decedent's medical condition;

e.   Failing to properly treat the decedent;

f.   Failing to discharge its statutory and common law duty to protect the
     decedent; and

g.   Failing to establish sufficient protocols for the care and supervision of the
     decedent.

132. OUR KIDS OF MIAMI-DADE/MONROE, INC. had the responsibility and duty to
     insure that all contractors and/or employees with whom they placed the infant
     were properly trained and supervised for the delivery of care to M.C. and all
     infants placed in its charge.

133. OUR KIDS OF MIAMI-DADE/MONROE, INC. had the responsibility and duty to
     insure that its contractor's had appropriate facilities for M.C. and that the facilities
     had safe and age appropriate clothing, supplies, and other materials for each
     child while in the custody and control of OUR KIDS OF MIAMI-DADE/MONROE,
     INC.

134. OUR KIDS OF MIAMI-DADE/MONROE, INC. had the responsibility and duty to insure that it had sufficient staff to properly supervise and monitor the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its contractors and/or employees; and insure the proper training of its contractors and/or employees in the delivery of care to infants accepted in the custody and care of OUR KIDS OF MIAMI-DADE/MONROE, INC.

135. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that its contractors and/or employees were negligently caring for and supervising the children placed in their custody and specifically were negligent in their supervision and care of the minor infant.

136. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that it its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

137. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that its contractors and/or employees were not safely preparing M.C. for bed.

138. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that its contractors and/or employees were loosely wrapping infants in a blanket covering the mouth and/or nose of the infant and that same could result in death by suffocation.

139. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that the practice of its contractors and/or employees of loosely wrapping an infant in a

blanket posed unreasonable risk of harm or death to infants placed in the custody and care of OUR KIDS OF MIAMI-DADE/MONROE, INC.

140. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that its failure to train, supervise, and/or monitor its contractors and/or employees could have resulted in the harm suffered by M.C.

141. As a result of OUR KIDS OF MIAMI-DADE/MONROE, INC.'s breach of its duty of care, an employee and/or agent of OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE INC. caused the death of M.C.

142. The negligence of OUR KIDS OF MIAMI-DADE/MONROE, INC., as set forth above, was the direct and proximate cause of the serious personal injuries sustained by the decedent and directly and proximately resulted in M.C.'s death.

143. That as a direct, foreseeable and proximate result of OUR KIDS OF MIAMI-DADE/MONROE. INC.'s negligence, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

144. That as a direct, foreseeable and proximate result of OUR KIDS OF MIAMI-DADE/MONROE, INC.'s negligence, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

Page 26 of 42

145. That as a direct, foreseeable and proximate result of OUR KIDS OF MIAMI–DADE/MONROE, INC.'s negligence, surviving siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; loss of net accumulations. These damages are permanent and continuing in nature.

WHEREFORE, the Plaintiffs demand judgment against Defendant, OUR KIDS OF MIAMI–DADE/MONROE, INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT VIII-VICARIOUS LIABILITY: OUR KIDS OF MIAMI-DADE/MONROE, INC.

146. Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set forth in its entirety below.

147. At all times material hereto, OUR KIDS OF MIAMI-DADE/MONROE, INC. exercised dominion over the infant, assuming care, custody and control over the decedent.

148. At all times material hereto, OUR KIDS OF MIAMI-DADE/MONROE, INC. accepted responsibility for the health, safety, welfare and supervision of decedent.

149. At all times material hereto, OUR KIDS OF MIAMI-DADE/MONROE, INC. owed a duty to care and protect the health, safety and care of decedent.

150. At all times material hereto, Kristen Glaspy, was acting for, upon, and in furtherance of the business of her employer and within the scope of her employment.

151. OUR KIDS OF MIAMI-DADE/MONROE, INC. is vicariously liable for its agent's, subagents' (HIS HOUSE, INC. and Kristen Glaspy), or employees' wrongful, reckless and/or negligent actions.

152. OUR KIDS OF MIAMI-DADE/MONROE, INC.'s agent and/or employee negligently supervised, treated and/or cared for the decedent, causing M.C. to suffer death by suffocation.

153. OUR KIDS OF MIAMI-DADE/MONROE, INC.'s agent's and/or employee's wrongful, reckless and/or negligent action(s) were the legal cause of M.C.'s fatal injuries, pain and suffering and death.

154. The negligence of OUR KIDS OF MIAMI-DADE/MONROE, INC.'s agent and/or employee was the direct and proximate cause of the serious personal injuries sustained by the decedent and directly and proximately resulted in M.C.'s death.

155. That as a direct, foreseeable and proximate result of OUR KIDS OF MIAMI-DADE/MONROE, INC.'s agent's and/or employee's negligence, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

Page 28 of 42

156. That as a direct, foreseeable and proximate result of OUR KIDS OF MIAMI-
DADE/MONROE, INC.'s agent's and/or employee's negligence, the Estate of
M.C., has suffered a loss of earnings, a loss of prospective net accumulations
and incurred medical and/or funeral expenses.

157. That as a direct, foreseeable and proximate result of OUR KIDS OF MIAMI-
DADE/MONROE, INC.'s agent's and/or employee's negligence, surviving
siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced
severe mental pain and suffering from the date of decedent's death; loss of
capacity for enjoyment of life; loss of decedent's companionship, protection,
support and services; loss of net accumulations. These damages are permanent
and continuing in nature.

   WHEREFORE, the Plaintiffs demand judgment against Defendant, OUR KIDS
OF MIAMI-DADE/MONROE, INC. for compensatory damages in excess of this Court's
jurisdictional limits, exclusive of costs and interests, and for any further relief which this
Court may find just and proper and further demand a trial by jury of all issues triable as
a matter of right by jury.

   **COUNT IX-FAILURE TO SUPERVISE: OUR KIDS OF MIAMI-DADE/MONROE, INC.**

158. Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set
forth in its entirety below.

159. OUR KIDS OF MIAMI-DADE/MONROE, INC. exercised dominion over the infant
assuming and accepted the responsibility of custody, care and supervision of
M.C.

Page 29 of 42

160. OUR KIDS OF MIAMI-DADE/MONROE, INC. had the responsibility and duty to insure that all contractors and/or employees were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

161. OUR KIDS OF MIAMI-DADE/MONROE, INC. had the responsibility and duty to protect the safety, health, and welfare of M.C. and all infants in its care.

162. OUR KIDS OF MIAMI-DADE/MONROE, INC. had the responsibility and duty to insure that its contractor's had appropriate facilities for M.C. and that the facilities had safe and age appropriate clothing, supplies, and other materials for each child while in the custody and control of OUR KIDS OF MIAMI-DADE/MONROE, INC.

163. OUR KIDS OF MIAMI-DADE/MONROE, INC. had the responsibility and duty to insure that it had sufficient staff to properly supervise and monitor the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its contractors and/or employees; and insure the proper training of its contractors and/or employees in the delivery of care to infants accepted in the custody and care of OUR KIDS OF MIAMI-DADE/MONROE, INC.

164. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that it its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

165. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that its contractors and/or employees were not safely preparing M.C. for bed.

166. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that its contractors and/or employees were loosely wrapping infants in a blanket covering the mouth and/or nose of the infant and that same could result in death by suffocation.

167. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that the practice of its contractors and/or employees of loosely wrapping an infant in a blanket was widespread and posed unreasonable risk of harm or death to infants placed in the custody and care of OUR KIDS OF MIAMI-DADE/MONROE, INC.

168. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that its failure to train, supervise, and/or monitor its contractors and/or employees could have resulted in the harm suffered by M.C.

169. OUR KIDS OF MIAMI-DADE/MONROE, INC.'s indifference to the substantial risk posed by its failure to train, supervise and/or monitor its agents and/or employees resulted in the suffocation death of M.C.

170. That as a direct, foreseeable and proximate result of OUR KIDS OF MIAMI-DADE/MONROE, INC.'s failure to supervise, train and/or monitor its agents and/or employees in this matter, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

Page 31 of 42

171. That as a direct, foreseeable and proximate result of OUR KIDS OF MIAMI-DADE/MONROE, INC.'s, failure to supervise, train and/or monitor its agents and/or employees in this matter, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

172. That as a direct, foreseeable and proximate result of OUR KIDS OF MIAMI-DADE/MONROE, INC.'s, failure to supervise, train and/or monitor its agents and/or employees in this matter, surviving siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; loss of net accumulations. These damages are permanent and continuing in nature.

WHEREFORE, the Plaintiffs demand judgment against Defendant, OUR KIDS OF MIAMI-DADE/MONROE, INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

### COUNT X-WRONGFUL DEATH: STATE OF FLORIDA, DEPARTMENT OF CHILDREN AND FAMILIES

173. Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set forth in its entirety below.

174.  At all times material hereto, THE STATE. OF FLORIDA, ("DCF") exercised dominion over the infant assuming custody. Control and supervision of the minor decedent, M.C.

175.  At all times material hereto, DCF owed a duty of care to protect the health, safety, welfare and supervision of the minor decedent, M.C.

176.  At all times material hereto, DCF breached its duty of care by:

   a.  Negligently placing M.C. outside of the jurisdiction of the Broward Court and into the care and custody of OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC.;

   b.  Negligently placing M.C. outside of its jurisdiction into the care and custody of OUR KIDS OF MIAMI-DADE /MONROE, INC. and/or CHILDNET, INC;

   c.  Failing to properly supervise the care of the decedent;

   d.  Failing to properly train individuals to care for the decedent;

   e.  Failing to properly diagnose the decedent's medical condition;

   f.  Failing to properly treat the decedent;

   g.  Failing to discharge its statutory and common law duty to protect the decedent;

   h.  Failing to establish sufficient protocols for the care and supervision of the decedent; and

   i.  Negligently delegating the care of the infant to organizations not equipped to care for the decedent.

176. DCF had the responsibility and duty to insure that all contractors and/or employees with whom they placed the infant were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

177. DCF had the responsibility and duty to insure that its contractor's had appropriate facilities for M.C. and that the facilities had safe and age appropriate clothing, supplies, and other materials for each child while in the custody and control of DCF.

178. DCF had the responsibility and duty to insure that it had sufficient staff to properly supervise and monitor the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its contractors and/or employees; and insure the proper training of its contractors and/or employees in the delivery of care to infants accepted in the custody and care of DCF.

179. DCF knew or should have known that its contractors and/or employees were negligently caring for and supervising the children placed in their custody and specifically were negligent in their supervision and care of the minor infant.

180. DCF knew or should have known that it its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

181. DCF knew or should have known that its contractors and/or employees were not safely preparing M.C. for bed.

Received Time Jan. 21. 2009 5:51PM No. 1848

182. DCF knew or should have known that its contractors and/or employees were loosely wrapping infants in a blanket covering the mouth and/or nose of the infant and that same could result in death by suffocation.

183. DCF knew or should have known that the practice of its contractors and/or employees of loosely wrapping an infant in a blanket posed unreasonable risk of harm or death to infants placed in the custody and care of DCF.

184. DCF knew or should have known that its failure to train, supervise, and/or monitor its contractors and/or employees could have resulted in the harm suffered by M.C.

185. As a result of DCF's breach of its duty of care, an employee and/or agent of OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE INC. caused the death of M.C.

186. The negligence of DCF, as set forth above, was the direct and proximate cause of the serious personal injuries sustained by the decedent and directly and proximately resulted in M.C.'s death.

187. That as a direct, foreseeable and proximate result of DCF's negligence, Jossalyn Crawford and Michael Coley, as individual, have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

Page 35 of 42

193. At all times material hereto, DCF's contractors and/or their employees, were acting for, upon, and in furtherance of the business of DCF pursuant to their contract with DCF and within the scope of their employment and/or contract.

194. DCF had a non-delegable duty for the health, welfare, and care of the decedent.

195. HIS HOUSE, INC. provides residential services for the placement of infants/children within Miami by and through its contract with CHILDNET, INC., DCF and/or OUR KIDS OF MIAMI-DADE/MONROE, INC.

196. DCF, by and through, CHILDNET, INC. sought out the services of a residential provider for M.C. and ultimately placed M.C. with HIS HOUSE, INC. and/or OUR KIDS OF MIAMI-DADE/MONROE, INC.

197. DCF is vicariously liable for its employees' or contractors' wrongful, reckless and/or negligent actions.

198. DCF's employees and/or contractors, CHILDNET, INC., OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC., negligently caused M.C. to suffer death by suffocation.

199. DCF's employees and/or contractors, CHILDNET, INC., OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC. wrongful, reckless and/or negligent actions were the legal cause of M.C.'s fatal injuries, pain and suffering and death.

200. The negligence of DCF's employees and/or contractors, CHILDNET, INC., OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC. was the direct

188.    That as a direct, foreseeable and proximate result of DCF's negligence, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

189.    That as a direct, foreseeable and proximate result of DCF's negligence, surviving siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; loss of net accumulations. These damages are permanent and continuing in nature.

WHEREFORE, the Plaintiffs demand judgment against Defendant, DCF for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT XI-VICARIOUS LIABILITY: STATE OF FLORIDA, DEPARTMENT OF CHILDREN AND FAMILIES

190.    Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set forth in its entirety below.

191.    At all times material hereto, DCF exercised dominion over the infant assuming custody, control and supervision of the minor decedent, M.C.

192.    At all times material hereto, DCF owed a duty of care to protect the health, safety, welfare and supervision of the minor decedent, M.C.

and proximate cause of the serious personal injuries sustained by the decedent and directly and proximately resulted in M.C.'s death.

201.   That as a direct, foreseeable and proximate result of DCF's employees and/or contractors, CHILDNET, INC., OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC.'s, negligence, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

202.   That as a direct, foreseeable and proximate result of DCF's employees and/or contractors, CHILDNET, INC., OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC.'s negligence, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

203.   That as a direct, foreseeable and proximate result of DCF's employees and/or contractors, CHILDNET, INC., OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC.'s, negligence, surviving siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; loss of net accumulations. These damages are permanent and continuing in nature.

WHEREFORE, the Plaintiffs demand judgment against Defendant, DCF for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT XII-FAILURE TO SUPERVISE: STATE OF FLORIDA, DEPARTMENT OF CHILDREN AND FAMILIES

204. Plaintiffs re-allege and re-aver paragraphs 1-39 as though they were fully set forth in its entirety below.

205. DCF exercised dominion over the infant assuming the responsibility of custody and care of M.C.

206. DCF had the responsibility and duty to insure that all contractors and/or employees were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

207. DCF had the responsibility and duty to protect the safety, health, and welfare of M.C. and all infants in its care.

208. DCF had the responsibility and duty to insure that its contractor's had appropriate facilities for M.C. and that the facilities had safe and age appropriate clothing, supplies, and other materials for each child while in the custody and control of DCF.

209. DCF had the responsibility and duty to insure that it had sufficient staff to properly supervise and monitor the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its contractors and/or

employees; and insure the proper training of its contractors and/or employees in the delivery of care to infants accepted in the custody and care of DCF.

210. DCF knew or should have known that it its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

211. DCF knew or should have known that its contractors and/or employees were not safely preparing M.C. for bed.

212. DCF knew or should have known that its contractors and/or employees were loosely wrapping infants in a blanket covering the mouth and/or nose of the infant and that same could result in death by suffocation.

213. DCF knew or should have known that the practice of its contractors and/or employees of loosely wrapping an infant in a blanket was widespread and posed unreasonable risk of harm or death to infants placed in the custody and care of DCF.

214. DCF knew or should have known that its failure to train, supervise, and/or monitor its contractors and/or employees could have resulted in the harm suffered by M.C.

215. DCF's indifference to the substantial risk posed by its failure to train, supervise and/or monitor its agents and/or employees resulted in the suffocation death of M.C. that as a direct, foreseeable and proximate result of DCF's failure to supervise, train and/or monitor its contractors and/or employees in this matter, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the

Received Time Jan. 21. 2009 5:51PM No. 1848

ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

216. That as a direct, foreseeable and proximate result of DCF's, failure to supervise, train and/or monitor its contractors and/or employees in this matter, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

217. That as a direct, foreseeable and proximate result of DCF's, failure to supervise, train and/or monitor its contractors and/or employees in this matter, surviving siblings, Bobby Crawford, Brice Brown and Michael Coley, Jr. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; loss of net accumulations. These damages are permanent and continuing in nature.

WHEREFORE, the Plaintiffs demand judgment against Defendant, DCF for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

FERTIG & GRAMLING
Attorneys for Plaintiffs
200 S. E. 13th Street
Ft. Lauderdale, Florida 33316
Tel.: (954) 763-5020
Fax: (954) 763-5412

By:

Levi G. Williams, Jr.
Fla. Bar No.: 0057169

Page 42 of 42

STATE OF FLORIDA

OFFICE of VITAL STATISTICS

CERTIFIED COPY

# CERTIFICATION OF BIRTH

STATE FILE NUMBER: 109-2007-008758

CHILD'S NAME: MADISON ARIEL COLEY

DATE OF BIRTH: JANUARY 10, 2007

SEX: FEMALE

COUNTY OF BIRTH: BROWARD

DATE FILED: JANUARY 15, 2007

MOTHER'S MAIDEN NAME: JOSSALYN DEMITRAIL CRAWFORD

FATHER'S NAME: MICHAEL ANTWAN COLEY

DATE ISSUED: FEBRUARY 12, 2007

_____, State Registrar

WARNING: THE ABOVE SIGNATURE... THIS DOCUMENT IS VOID IF PHOTOCOPIED ON SECURITY PAPER WITH A WATERMARK OF THE GREAT SEAL OF THE STATE OF FLORIDA ON THE FRONT, AND THE BACK CONTAINS SPECIAL LINES WITH TEXT AND SEALS IN BACKGROUND TINT.
DH FORM 1946 08-04

PLAINTIFF'S
EXHIBIT

CASE
NO. 0902594(25)

EXHIBIT
NO. 1

REQ: 2009144900

HEALTH

23353130    CERTIFICATION OF VITAL RECORD

STATE OF FLORIDA

OFFICE of VITAL STATISTICS

CERTIFIED COPY

FLORIDA CERTIFICATE OF DEATH

MADISON ABEEL COLEY

FEMALE

January 10, 2007

Date of Death: February 14, 2007

Fort Lauderdale, Florida

Miami-Dade

Miami

Florida — Broward

Lauderdale Lakes

4844 NW 24th Court — 329 — 33313

Never Worked

Michael Coley

Josselyn Crawford — Mother — Florida

Lauderdale Lakes — 4844 NW 24th Court, Apt. #329 — 33313

Sunset Memorial Gardens — Florida — Florida

Fort Lauderdale — 3501 W. Broward Blvd. — 33312

07-1-00401

FLORIDA — MIAMI

7/18/07 — Melvin Thomas

JUN 2 7 2007

Suffocation by a blanket

February 2007 — Unknown — Florida

Our Lady — 20000 NW 47th AVE

Decedent was wrapped in and suffocated by a blanket.

Melvin Thomas

OCT 29 2008

HEALTH

34592468 — CERTIFICATION OF VITAL RECORD

*3 4 5 9 2 4 6 8*

WARNING: THIS DOCUMENT IS PRINTED OR PHOTOCOPIED ON SECURITY PAPER WITH THE SEAL OF THE STATE OF FLORIDA. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK. THE DOCUMENT FACE CONTAINS A MULTICOLORED BACKGROUND AND GOLD EMBOSSED SEAL. THE BACK CONTAINS SPECIAL LINES WITH TEXT.

PLAINTIFF'S EXHIBIT

CASE NO. 0902544(25)

EXHIBIT NO. 2

IN THE CIRCUIT COURT FOR BROWARD COUNTY,
FLORIDA        PROBATE DIVISION

IN RE: ESTATE OF
MADISON ARIEL COLEY  File No. **09 - 00 025**

       Division **675**

   Deceased.

### PETITION FOR ADMINISTRATION
(intestate Florida resident— multiple petitioners and PRs)

Petitioners allege:

1.  Petitioners have an interest in the above estate as natural mother and natural father,

respectively. Petitioners' names and addresses are:

Jossalyn Crawford
1041 S.W. 7th Avenue
Deerfield Beach, Florida 33441

Michael A. Coley
4844 N.W. 24th Court, Apt. 137
Lauderdale Lakes, Florida 33313

and the name and office address of petitioners' attorney are set forth at the end of this petition.

2.  Decedent, Madison Ariel Coley, whose last known address was 1041 S.W. 7th Avenue,

Deerfield Beach, Florida 33441, and whose age was 1 month, died on February 15, 2007, at Miami-Dade

County, and on the date of death decedent was domiciled in Broward County, Florida.

3.  So far as is known, the names of the beneficiaries of this estate and of the decedent's

surviving spouse, if any, their addresses and relationships to decedent, and the dates of birth of any who are

minors, are:

| NAME | ADDRESS | RELATIONSHIP | BIRTH DATE [if Minor] |
|------|---------|--------------|-----------------------|
| Jossalyn Crawford | 1041 S.W. 7th Avenue Deerfield Beach, Florida 33441 | natural mother | |

Bar Form No. P-3.0131-1 of 2
© Florida Lawyers Support Services, Inc.
January 1, 2008



PLAINTIFF'S EXHIBIT

CASE NO. 0902544(25)

EXHIBIT NO. 3

Michael A. Coley     4844 N.W. 24th Court, Apt. 137     natural father
                           Lauderdale Lakes, Florida 33313

4.      Venue of this proceeding is in this county because decedent lived in Broward County.

5.      Jossalyn Crawford, whose address is 1041 S.W. 7th Avenue, Deerfield Beach, Florida 33441 and Michael A. Coley, whose address is 4844 N.W. 24th Court, Apt. 137, Lauderdale Lakes, Florida 33313, and who are qualified under the laws of the State of Florida to serve as personal representatives of the decedent's estate, are entitled to preference in appointment as personal representatives because they are the natural parents of the minor child.

6.      The nature and approximate value of the assets in this estate are unknown.

7.      This estate will not be required to file a federal estate tax return.

8.      After the exercise of reasonable diligence, petitioners are unaware of any unrevoked wills or codicils of decedent.

Petitioners request that Jossalyn Crawford and Michael A. Coley be appointed personal representatives of the estate of the decedent.

Under penalties of perjury, we declare that we have read the foregoing, and the facts alleged are true, to the best of our knowledge and belief.

Signed on _____

_____
Jossalyn Crawford
Petitioner

_____
Michael A. Coley
Petitioner

_____
Frank R. Gramling
Attorney for Petitioners
Florida Bar No. 199346
Fertig & Gramling
200 S.E. 13 Street
Fort Lauderdale, Florida 33316
Telephone: (954) 763-5020

STATE OF FLORIDA
BROWARD COUNTY
I DO HEREBY CERTIFY the within and foregoing is a true copy from the records on file in the office of the Circuit Court Clerk of Broward County, Florida.
WITNESS my hand and Official Seal of Fort Lauderdale Florida, this the 7th day of JANUARY A.D. 20 09
Howard C. Forman, Clerk
_____
Deputy Clerk

Bar Form No. P-3.0131-2 of 2
© Florida Lawyers Support Services, Inc.
January 1, 2008

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
BROWARD COUNTY, FLORIDA

CASE NO.: 09-02544 CA 25

JOSSALYN D. CRAWFORD, and
MICHAEL A. COLEY, Duly Appointed
Personal Representatives of the Estate
of M.C., Minor Decedent,

      Plaintiffs,

vs.

CHILDNET, INC., HIS HOUSE, INC.,
OUR KIDS OF MIAMI-DADE/MONROE,
INC., and STATE OF FLORIDA,
DEPARTMENT OF CHILDREN AND FAMILIES

      Defendants.

_____/

*Answer Due 4/8/09* (handwritten)

## PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH

**COME NOW**, the Plaintiffs, JOSSALYN D. CRAWFORD (natural mother),and

MICHAEL A. COLEY (natural father), as duly appointed Personal Representatives for

The Estate of M.C. , Minor Decedent, and JOSSALYN D. CRAWFORD and MICHAEL

A. COLEY as individuals, and sue the Defendants, CHILDNET, INC., HIS HOUSE,

INC., OUR KIDS OF MIAMI-DADE/MONROE, INC., and the STATE OF FLORIDA,

DEPARTMENT OF CHILDREN AND FAMILIES, pursuant to F.S. § 46.021 F.S. § 768

*et seq.*, by and through the undersigned counsel and allege:

Page 1 of 38

## JURISDICTION AND VENUE

1.   That this is an action for damages in excess of the jurisdictional limits of this Court, exclusive of costs.

2.   Plaintiffs have satisfied all conditions precedent, including statutory notice requirements, prior to bringing this action, and/or same have otherwise been discharged.

3.   The decedent, Madison Ariel Coley was born on or about January 10, 2007. See Exhibit 1.

4.   Her natural mother was and is Jossalyn Demtrail Crawford. See Exhibit 1.

5.   Her natural father was and is Michael Antwan Coley. See Exhibit 1.

6.   M.C. died on or about February 15, 2007. See Exhibit 2.

7.   Plaintiffs, JOSSALYN D. CRAWFORD (natural mother), and MICHAEL A. COLEY, are the duly appointed Personal Representatives of the Estate of MADISON COLEY, minor decedent. A copy of the Order Appointing Personal Representatives and Letters of Administration are attached hereto and incorporated herein by reference. Composite Exhibit 3.

8.   Decedent is survived by her natural mother, Jossalyn D. Crawford; natural father, Michael A. Coley; brother, Bobby Crawford; brother, Brice Brown; and brother, Michael Coley, Jr.

9.   The beneficiaries of the recovery in this action are JOSSALYN D. CRAWFORD and MICHAEL A. COLEY the natural parents of the decedent, M.C.

10. JOSSALYN D. CRAWFORD and MICHAEL A. COLEY the natural parents of the decedent, are sui juris.

11. At all times material to this action the Plaintiffs, JOSSALYN D. CRAWFORD, MICHAEL A. COLEY, all siblings of the decedent, and M.C., the minor decedent, were and are residents of Broward County, Florida.

12. CHILDNET, INC. is a Florida non-profit corporation, formed under the laws of the State of Florida, with its principal place of business being Broward County, Florida, and authorized to do business in Broward County and is otherwise sui juris.

13. HIS HOUSE, INC. is a Florida non-profit corporation, formed under the laws of the State of Florida, with its principal place of business being Miami-Dade County, Florida, and authorized to do business in Miami-Dade County and is otherwise sui juris.

14. OUR KIDS OF MIAMI-DADE MONROE, INC. is a Florida non-profit corporation, formed under the laws of the State of Florida, with its principal place of business being Miami-Dade, Florida, and authorized to do business in Miami-Dade and Monroe counties and is otherwise sui juris.

15. The State of Florida, Florida Department of Children and Families (hereinafter referred to as DCF, DCF Miami and/or DCF Broward) is an agency or subdivision of the State of Florida operating in Broward County, Florida by and through District 10 and in Miami-Dade, Florida by and through District 11.

## GENERAL ALLEGATIONS

16.  Defendant, The State of Florida, failed to comply with the requirements of F.S. §39.521 *et seq.*

17.  M.C. was removed from JOSSALYN CRAWFORD'S home and placed in the protective custody and control of DCF Broward on or about February 6, 2007.

18.  DCF owed a duty of care to M.C. acting in its capacity as in *loco parentis.*

19.  M.C. was placed in the custody and control of CHILDNET, INC. by DCF Broward on or about February 6, 2007.

20.  CHILDNET, INC. owed a duty of care to M.C. acting in its capacity as in *loco parentis.*

21.  DCF Broward filed a "Dependency Shelter Petition" on February 7, 2007 supporting the removal of M.C. from the home of JOSSALYN CRAWFORD.

22.  M.C. was placed in the custody and control of OUR KIDS OF MIAMI-DADE/MONROE, INC. by CHILDNET, INC. on or about February 6, 2007.

23.  OUR KIDS OF MIAMI-DADE/MONROE, INC. owed a duty of care to M.C. acting in its capacity as in *loco parentis.*

24.  M.C. was placed in the custody and control of HIS HOUSE, INC. by DCF Miami and/or OUR KIDS OF MIAMI-DADE/MONROE, INC. on or about February 6, 2007.

25.  HIS HOUSE, INC. owed a duty of care to M.C. acting in its capacity as in *loco parentis.*

26. Kristen Glaspy was the foster care mother caring for the decedent, M.C., at all times material to the death of M.C.

27. Kristen Glaspy, at all times material hereto, was an employee and/or agent of HIS HOUSE, INC.

28. Kristen Glaspy knew or should have known that M.C. had been congested for the 24 hours preceding her death.

29. Kristen Glaspy negligently cared for and/or supervised the infant, including negligently wrapping M.C. in a blanket.

30. Upon information and belief, Kristen Glaspy last fed M.C. at 12:00am on February 15, 2007 and last saw her alive at 12:30am on February 15, 2007.

31. Upon information and belief, Kristen Glaspy found M.C. deceased at 5:17am on February 15, 2007.

32. M.C. was found dead, leaning forward on her side, with the blanket completely covering her nose and mouth.

33. The cause of death of M.C. was suffocation by blanket.

34. All defendants and HIS HOUSE, INC. in particular knew or should have known of a risk of serious harm or death to an infant in loosely wrapping an infant in a blanket and/or covering the infant's nose and mouth and defendants recklessly disregarded that risk.

35. M.C. experienced great physical and mental pain and suffering for a period of time prior to her death by suffocation.

36.    Upon information and belief M.C. died at Landmark Shelters, Building 6A, 20000
       N.W. 47th Avenue, Opa Locka, Florida 33055.

37.    Upon information and belief Landmark Shelters is owned and/or operated by HIS
       HOUSE, INC.

38.    Plaintiffs reserve and preserve their right to amend this Complaint to include a
       claim for punitive damages pursuant to Florida Statutes 768.72; Porter v. Ogden,
       241 F.3d 1334, C.A. 11(Fla.), 2001 and all applicable Florida Rules of Civil
       Procedure.

## COUNT I-WRONGFUL DEATH: CHILDNET, INC.

39.    Plaintiffs re-allege and re-aver paragraphs 1-38 as though they were fully set
       forth in its entirety below.

40.    At all times material hereto, CHILDNET, INC. exercised dominion over the infant,
       assuming custody and control of the minor decedent, M.C.

41.    At all times material hereto, CHILDNET, INC. upon exercising dominion over the
       child owed a duty of care to protect the health, safety, and welfare of the minor
       decedent, M.C.

42.    At all times material hereto, CHILDNET, INC. breached its duty of care by:

       a.    Negligently placing M.C. outside of its jurisdiction in to the care and
             custody of OUR KIDS OF MIAMI-DADE /MONROE, INC. and/or HIS
             HOUSE INC;

       b.    Failing to properly supervise the care of the decedent;

c.    Failing to properly train individuals to care for the decedent;

d.    Failing to properly diagnose the decedent's medical condition;

e.    Failing to properly treat the decedent;

f.    Failing to discharge its statutory and common law duty to protect the decedent; and

g.    Failing to establish sufficient protocols for the care and supervision of the decedent.

43.    CHILDNET, INC. had the responsibility and duty to insure that all contractors and/or employees with whom they placed the infant were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

44.    CHILDNET, INC. had the responsibility and duty to insure that its contractors had appropriate facilities for M.C. and that the facilities had safe and age appropriate clothing, supplies, and other materials for each child while in the custody and control of CHILDNET, INC.

45.    CHILDNET, INC. had the responsibility and duty to insure that it had sufficient staff to properly supervise and monitor the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its contractors and/or employees; and insure the proper training of its contractors and/or employees in the delivery of care to infants accepted in the custody and care of CHILDNET, INC.

46.    CHILDNET, INC. knew or should have known that its contractors and/or employees were negligently caring for and supervising the children placed in

Page 7 of 38

their custody and specifically were negligent in their supervision and care of the minor infant.

47. CHILDNET, INC. knew or should have known that it its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

48. CHILDNET, INC. knew or should have known that its contractors and/or employees were not safely preparing M.C. for bed.

49. CHILDNET, INC. knew or should have known that its contractors and/or employees were loosely wrapping infants in a blanket covering the mouth and/or nose of the infant and that same could result in death by suffocation.

50. CHILDNET, INC. knew or should have known that the practice of its contractors and/or employees of loosely wrapping an infant in a blanket posed unreasonable risk of harm or death to infants placed in the custody and care of CHILDNET, INC.

51. CHILDNET, INC. knew or should have known that its failure to train, supervise, and/or monitor its contractors and/or employees could have resulted in the harm suffered by M.C.

52. That as a result of Defendant's negligence Plaintiffs Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship,

protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

53.   That as a direct, foreseeable and proximate result of CHILDNET, INC.'s, employees and/or contractors, OUR KIDS OF MIAMI-DADE/MONROE, INC.'s and/or HIS HOUSE, INC.'s, negligence, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

**WHEREFORE**, the Plaintiffs demand judgment against the Defendant, CHILDNET, INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT II-VICARIOUS LIABILITY: CHILDNET, INC.

54.   Plaintiffs re-allege and re-aver paragraphs 1-38 as though they were fully set forth in its entirety below.

55.   At all times material hereto, CHILDNET, INC. exercised dominion over the infant assuming custody, control and supervision of the minor decedent, M.C.

56.   At all times material hereto, CHILDNET, INC. accepted responsibility for the health, safety, welfare and supervision of decedent, M.C.

57.   At all times material hereto, CHILDNET, INC. owed a duty of care to protect the health, safety, and welfare of the minor decedent, M.C.

58. At all times material hereto, HIS HOUSE, INC., and/or its agents and employees, were acting for, upon, and in furtherance of the business of its employer and/or contracting agent and within the scope of its employment and/or contract.

59. HIS HOUSE, INC. provides residential services for the placement of infants/children within Miami by and through its contract with CHILDNET, INC., DCF and/or OUR KIDS OF MIAMI-DADE/MONROE, INC.

60. CHILDNET, INC. placed M.C. with HIS HOUSE, INC. by and through DCF and/or OUR KIDS OF MIAMI-DADE/MONROE, INC.

61. CHILDNET, INC. is vicariously liable under the doctrine of *Respondeat Superior* for wrongful, reckless and/or negligent actions of OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC.

62. CHILDNET, INC.'s employees and/or contractors, OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC. wrongful, reckless and/or negligent actions were the legal cause of M.C.'s fatal injuries, pain and suffering and death.

63. The negligence of CHILDNET, INC.'s employees and/or contractors, OUR KIDS OF MIAMI-DADE/MONROE, INC. and/or HIS HOUSE, INC. were the direct and proximate cause of the serious personal injuries sustained by the decedent and directly and proximately resulted in M.C.'s death.

64. That as a direct, foreseeable and proximate result of CHILDNET, INC.'s employees and/or contractors, OUR KIDS OF MIAMI-DADE/MONROE, INC.'s and/or HIS HOUSE, INC.'s, negligence, Jossalyn Crawford and Michael Coley,

as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

65. That as a direct, foreseeable and proximate result of CHILDNET, INC.'s, employees and/or contractors, OUR KIDS OF MIAMI-DADE/MONROE, INC.'s and/or HIS HOUSE, INC.'s, negligence, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

WHEREFORE, the Plaintiffs demand judgment against Defendant, CHILDNET, INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT III-FAILURE TO SUPERVISE: CHILDNET, INC.

66. Plaintiffs re-allege and re-aver paragraphs 1-38 as though they were fully set forth in its entirety below.

67. CHILDNET, INC. exercised dominion over the infant assuming the responsibility of custody, care and supervision of M.C.

68. CHILDNET, INC. had the responsibility and duty to insure that all contractors and/or employees with whom they placed the infant were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

69. CHILDNET, INC. had the responsibility and duty to protect the safety, health, and welfare of M.C. and all infants in its care.

70. CHILDNET, INC. had the responsibility and duty to insure that its contractor's had appropriate facilities for M.C. and that the facilities had safe and age appropriate clothing, supplies, and other materials for each child while in the custody and control of CHILDNET, INC.

71. CHILDNET, INC. had the responsibility and duty to insure that it had sufficient staff to properly supervise and monitor the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its contractors and/or employees; and insure the proper training of its contractors and/or employees in the delivery of care to infants accepted in the custody and care of CHILDNET, INC.

72. CHILDNET, INC. knew or should have known that its contractors and/or employees were negligently caring for and supervising the children placed in their custody and specifically were negligent in their supervision and care of the minor infant.

73. CHILDNET, INC. knew or should have known that it its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

74. CHILDNET, INC. knew or should have known that its contractors and/or employees were not safely preparing M.C. for bed.

75. CHILDNET, INC. knew or should have known that its contractors and/or employees were loosely wrapping infants in a blanket covering the mouth and/or nose of the infant and that same could result in death by suffocation.

76. CHILDNET, INC. knew or should have known that the practice of its contractors and/or employees of loosely wrapping an infant in a blanket posed unreasonable risk of harm or death to infants placed in the custody and care of CHILDNET, INC.

77. CHILDNET, INC. knew or should have known that its failure to train, supervise, and/or monitor its contractors and/or employees could have resulted in the harm suffered by M.C.

78. CHILDNET, INC.'s indifference to the substantial risk posed by its failure to train, supervise and/or monitor its agents and/or employees resulted in the suffocation death of M.C.

79. That as a direct, foreseeable and proximate result of CHILDNET, INC.'s failure to supervise, train and/or monitor its agents and/or employees in this matter, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations. These damages are permanent and continuing in nature.

80.    That as a direct, foreseeable and proximate result of CHILDNET, INC.'s, failure
to supervise, train and/or monitor its agents and/or employees in this matter, the
Estate of M.C., has suffered a loss of earnings, a loss of prospective net
accumulations and incurred medical and/or funeral expenses.

**WHEREFORE**, the Plaintiffs demand judgment against Defendant, CHILDNET,
INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive
of costs and interests, and for any further relief which this Court may find just and
proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT IV-WRONGFUL DEATH: HIS HOUSE, INC.

81.    Plaintiffs re-allege and re-aver paragraphs 1-38 as though they were fully set
forth in its entirety below.

82.    At all times material hereto, HIS HOUSE, INC. exercised dominion over the infant
assuming custody and control of the minor decedent, M.C.

83.    At all times material hereto, HIS HOUSE, INC. owed a duty of care to protect the
health, safety, and welfare of the minor decedent, M.C.

84.    At all times material hereto, HIS HOUSE, INC. breached its duty of care by:

a.    Negligently accepting placement of M.C., from outside of its jurisdiction,
into its care and custody from OUR KIDS OF MIAMI-DADE /MONROE,
INC., DCF, and/or CHILDNET, INC;

b.    Failing to properly supervise the care of the decedent;

c.    Failing to properly train individuals to care for the decedent;

Page 14 of 38

d.    Failing to properly diagnose the decedent's medical condition;

e.    Failing to properly treat the decedent;

f.    Failing to discharge its statutory and common law duty to protect the decedent; and

g.    Failing to establish sufficient protocols for the care and supervision of the decedent.

85.    HIS HOUSE, INC. had the responsibility and duty to insure that all contractors and/or employees with whom they placed the infant were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

86.    HIS HOUSE, INC. had the responsibility and duty to insure that its contractor's and/or employees had appropriate facilities for M.C. and that the facilities had safe and age appropriate clothing, supplies, and other materials for each child while in the custody and control of HIS HOUSE, INC.

87.    HIS HOUSE, INC. had the responsibility and duty to insure that it had sufficient staff to properly supervise and monitor the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its contractors and/or employees; and insure the proper training of its contractors and/or employees in the delivery of care to infants accepted in the custody and care of HIS HOUSE, INC.

88.    HIS HOUSE, INC. knew or should have known that its contractors and/or employees were negligently caring for and supervising the children placed in

their custody and specifically were negligent in their supervision and care of the minor infant.

89. HIS HOUSE, INC. knew or should have known that it its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

90. HIS HOUSE, INC. knew or should have known that its contractors and/or employees were not safely preparing M.C. for bed.

91. HIS HOUSE, INC. knew or should have known that its contractors and/or employees were loosely wrapping infants in a blanket covering the mouth and/or nose of the infant and that same could result in death by suffocation.

92. HIS HOUSE, INC. knew or should have known that the practice of its contractors and/or employees of loosely wrapping an infant in a blanket posed unreasonable risk of harm or death to infants placed in the custody and care of HIS HOUSE, INC.

93. HIS HOUSE, INC. knew or should have known that its failure to train, supervise, and/or monitor its contractors and/or employees could have resulted in the harm suffered by M.C.

94. As a result of HIS HOUSE, INC.'s breach of its duty of care, an employee and/or agent of HIS HOUSE INC. caused the death of M.C.

95. The negligence of HIS HOUSE, INC., as set forth above, was the direct and proximate cause of the serious personal injuries sustained by the decedent and directly and proximately resulted in M.C.'s death.

96.   That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s
negligence, Jossalyn Crawford and Michael Coley, as individuals and for and
behalf of the ESTATE OF M.C. have experienced severe mental pain and
suffering from the date of decedent's death; loss of capacity for enjoyment of life;
loss of decedent's companionship, protection, support and services; funeral
expenses; loss of net accumulations. These damages are permanent and
continuing in nature.

97.   That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s
negligence, the Estate of M.C., has suffered a loss of earnings, a loss of
prospective net accumulations and incurred medical and/or funeral expenses.

**WHEREFORE**, the Plaintiffs demand judgment against Defendant, HIS HOUSE,
INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive
of costs and interests, and for any further relief which this Court may find just and
proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT V-VICARIOUS LIABILITY: HIS HOUSE, INC.

98.   Plaintiffs re-allege and re-aver paragraphs 1-38 as though they were fully set
forth in its entirety below.

99.   At all times material hereto, HIS HOUSE, INC. had custody and control of the
minor decedent, M.C.

100.  At all times material hereto, HIS HOUSE, INC. exercised dominion over the
infant.

101.  At all times material hereto, HIS HOUSE, INC. accepted responsibility for the health, safety, welfare and supervision of decent, M.C.

102.  At all times material hereto, HIS HOUSE, INC. owed a duty of care to protect the health, safety, and welfare of the minor decedent, M.C.

103.  At all times material hereto, Kristen Glaspy, was acting for, upon, and in furtherance of the business of her employer, HIS HOUSE, INC., and within the scope of her employment.

104.  HIS HOUSE, INC. is vicariously liable for its employees' wrongful, reckless and/or negligent actions.

105.  HIS HOUSE, INC.'s employee, Kristen Glaspy, was improperly trained; and she negligently cared for, treated and supervised the decedent, causing M.C. to suffer death by suffocation.

106.  HIS HOUSE, INC.'s employee, Kristen Glaspy's action(s) at all times material hereto was wrongful, reckless and/or negligent; serving as the legal cause of M.C.'s fatal injuries, pain and suffering and death.

107.  The negligence of HIS HOUSE, INC.'s employee, Kristen Glaspy, as set forth above, was the direct and proximate cause of the serious personal injuries sustained by the decedent and directly and proximately resulted in M.C.'s death.

108.  That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s employee, Kristen Glaspy's, negligence, Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the ESTATE OF M.C. have experienced severe mental pain and suffering from the date of decedent's death; loss of

capacity for enjoyment of life; loss of decedent's companionship, protection, support and services; funeral expenses; loss of net accumulations.   These damages are permanent and continuing in nature.

109. That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s, employee, Kristen Glaspy's, negligence, the Estate of M.C., has suffered a loss of earnings, a loss of prospective net accumulations and incurred medical and/or funeral expenses.

**WHEREFORE**, the Plaintiffs demand judgment against Defendant, HIS HOUSE, INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive of costs and interests, and for any further relief which this Court may find just and proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT VI-FAILURE TO SUPERVISE; HIS HOUSE, INC.

110. Plaintiffs re-allege and re-aver paragraphs 1-38 as though they were fully set forth in its entirety below.

111. HIS HOUSE INC. accepted the responsibility of custody and care of M.C. and other infants pursuant to a contract with DCF, CHILDNET, INC., and/or OUR KIDS OF MIAMI-DADE/MONROE, INC.

112. HIS HOUSE, INC. had the responsibility and duty to insure that all agents and/or employees were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

113. HIS HOUSE, INC. had the responsibility and duty to protect the safety, health, and welfare of M.C. and all infants in its care while preparing M.C. and all other infants for bed.

114. HIS HOUSE, INC. had the responsibility and duty to insure that its facilities had safe and age appropriate clothing, supplies, and other materials for each child during their stay with HIS HOUSE, INC.

115. HIS HOUSE, INC. had the responsibility and duty to insure that it had sufficient staff to properly supervise the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its agents and/or employees; and properly train its agents and/or employees in the delivery of care to infants accepted in the custody and care of HIS HOUSE, INC.

116. HIS HOUSE, INC. knew or should have known that it did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.

117. HIS HOUSE, INC. knew or should have known that its agents and/or employees were not safely preparing M.C. for bed.

118. HIS HOUSE, INC. Knew or should have known that loosely wrapping an infant in a blanket could result in the blanket covering the mouth and/or nose of the infant resulting in death by suffocation.

119. HIS HOUSE, INC. knew or should have known that the practice of its agents and/or employees of loosely wrapping an infant in a blanket was widespread and

posed unreasonable risk of harm or death to infants placed in the custody and
care of HIS HOUSE, INC.

120. HIS HOUSE, INC. knew or should have known that failure to train and supervise
its agents and/or employees could have resulted in the harm suffered by M.C.

121. HIS HOUSE, INC.'s indifference to the substantial risk posed by its failure to
train, supervise and/or monitor its agents and/or employees resulted in the
suffocation death of M.C.

122. That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s failure
to supervise, train and/or monitor its agents and/or employees in this matter,
Jossalyn Crawford and Michael Coley, as individuals and for and behalf of the
ESTATE OF M.C. have experienced severe mental pain and suffering from the
date of decedent's death; loss of capacity for enjoyment of life; loss of decedent's
companionship, protection, support and services; funeral expenses; loss of net
accumulations. These damages are permanent and continuing in nature.

123. That as a direct, foreseeable and proximate result of HIS HOUSE, INC.'s, failure
to supervise, train and/or monitor its agents and/or employees in this matter, the
Estate of M.C., has suffered a loss of earnings, a loss of prospective net
accumulations and incurred medical and/or funeral expenses.

**WHEREFORE**, the Plaintiffs demand judgment against Defendant, HIS HOUSE,
INC. for compensatory damages in excess of this Court's jurisdictional limits, exclusive
of costs and interests, and for any further relief which this Court may find just and
proper and further demand a trial by jury of all issues triable as a matter of right by jury.

## COUNT VII-WRONGFUL DEATH: OUR KIDS OF MIAMI-DADE/MONROE, INC.

124. Plaintiffs re-allege and re-aver paragraphs 1-38 as though they were fully set forth in its entirety below.

125. At all times material hereto, OUR KIDS OF MIAMI-DADE/MONROE, INC. exercised dominion over the infant assuming custody and control of the minor decedent, M.C.

126. At all times material hereto, OUR KIDS OF MIAMI-DADE/MONROE, INC. owed a duty of care to protect the health, safety, and welfare of the minor decedent, M.C.

    a. At all times material hereto, OUR KIDS OF MIAMI-DADE/MONROE, INC. breached its duty of care by: Negligently accepting custody and control of M.C. from outside of its jurisdiction and negligently placing M.C. outside of its jurisdiction into the care and custody of HIS HOUSE, INC;

    b. Failing to properly supervise the care of the decedent;

    c. Failing to properly train individuals to care for the decedent;

    d. Failing to properly diagnose the decedent's medical condition;

    e. Failing to properly treat the decedent;

    f. Failing to discharge its statutory and common law duty to protect the decedent; and

    g. Failing to establish sufficient protocols for the care and supervision of the decedent.

Page 22 of 38

127. OUR KIDS OF MIAMI-DADE/MONROE, INC. had the responsibility and duty to insure that all contractors and/or employees with whom they placed the infant were properly trained and supervised for the delivery of care to M.C. and all infants placed in its charge.

128. OUR KIDS OF MIAMI-DADE/MONROE, INC. had the responsibility and duty to insure that its contractor's had appropriate facilities for M.C. and that the facilities had safe and age appropriate clothing, supplies, and other materials for each child while in the custody and control of OUR KIDS OF MIAMI-DADE/MONROE, INC.

129. OUR KIDS OF MIAMI-DADE/MONROE, INC. had the responsibility and duty to insure that it had sufficient staff to properly supervise and monitor the care of the infants in its custody and control; properly supervise and monitor the delivery of care by its contractors and/or employees; and insure the proper training of its contractors and/or employees in the delivery of care to infants accepted in the custody and care of OUR KIDS OF MIAMI-DADE/MONROE, INC.

130. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that its contractors and/or employees were negligently caring for and supervising the children placed in their custody and specifically were negligent in their supervision and care of the minor infant.

131. OUR KIDS OF MIAMI-DADE/MONROE, INC. knew or should have known that it its contractors and/or employees did not have the appropriate and/or sufficient clothing, supplies and other materials for the care of M.C.