UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20039-CIV-UNGARO/SIMONTON

**DIAMOND STATE INSURANCE COMPANY,**

    Plaintiff,

v.

**HIS HOUSE, INC. et al.,**

    Defendant.
_____/

**DISCOVERY ORDER ON DEFENDANT HIS HOUSE INC.'S
MOTION TO COMPEL CORPORATE REPRESENTATIVE
DEPOSITION, MOTION FOR PROTECTIVE ORDER
AND MOTION TO QUASH SUBPOENA OF KRISTEN GLASPY**

Presently pending before the Court are Defendant His House, Inc.'s Motion to Compel 30(b)(6) Deposition of Plaintiff Diamond State Insurance Company (DE # 44); Defendant His House, Inc's Motion for Protective Order (DE # 49); and, Defendant His House, Inc.'s Motion to Quash Subpoena of Kristen Glaspy or Alternatively for Protective Order (DE # 51). The Motions have been fully briefed (DE ## 56, 57 58, 59, 65, 66), and referred to the undersigned Magistrate Judge (DE ## 45, 50, 53).

    I.    **BACKGROUND**

This matter was initiated when Diamond State Insurance Company ("Diamond") filed a two count Complaint seeking a declaratory judgment with respect to its rights and obligations under a Professional Liability Policy (Count I) and a Commercial General Liability Policy (Count II) issued to His House, Inc., ("His House") a non-profit corporation (DE # 1). The Declaratory Relief Complaint alleges that His House, Inc., was named as a defendant in an action filed in the Seventeenth Judicial Circuit, Broward County, Florida, related to the death of an infant placed at His House following removal

of the child by the Department of Children and Families-Broward (DCF) from the home of her mother (DE # 1 at ¶¶ 7-13).  That action alleges that the infant M.C. was found deceased on February 15, 2007, some time after being wrapped in a blanket by Kristen Glaspy, the foster care mother who was employed by His House (DE # 1 ¶¶ 15, 18, 20).  The state action, which alleges wrongful death, was brought against His House by the Estate of the minor decedent and the natural parents of the child, Jossalyn D. Crawford and Michael Coley as Personal Representatives of the Estate (DE # 11 at ¶ 7).  According to the Complaint in this action, Defendant His House sought coverage in the wrongful death action from Diamond pursuant to the Professional Liability Policy and a Commercial General Liability Policy issued by Diamond to His House.  In addition, His House sought coverage from Lexington Insurance Company (Lexington) which also issued a general coverage liability policy to His House (DE # 1 ¶¶ 46, 47).  Lexington is currently providing a defense to His House in the state action, but Diamond denied His House's request for coverage in that action (DE # 1 ¶¶ 47, 48).

  Diamond now seeks a declaration from this Court that it has no duty to defend or indemnify His House for the claims brought in state court under either the Professional Liability Policy or the Commercial General Liability Policy.  Diamond has named His House, and the natural Parents a Personal Representatives of the infant's Estate as defendants in this action.  Diamond alleges that under the Professional Liability Policy, Diamond does not owe a duty to defend nor indemnify His House because the actions which allegedly resulted in the death of the infant do not qualify as a "professional social services" and thus are not a "wrongful act" under that policy (DE # 1 ¶¶ 50-55).  In addition, Diamond alleges that His House knew of the death of the infant prior to June 30, 2008, the date that the application for the professional liability policy was completed,

and could have reasonably foreseen that a claim would be brought against His House prior to signing the application, and thus no coverage is available under that policy (DE # 1 at ¶¶ 65-70).[1]  Similarly, Diamond alleges that it does not have a duty to defend and/or indemnify His House under the Commercial General Liability Policy because the injury to the infant occurred prior to the policy period and thus no coverage is available under that policy either (DE # 1 at ¶¶ 80-86).

His House has filed an Answer and Affirmative Defenses (DE # 10).  In the Answer, His House responds to many of Diamond's allegations regarding coverage under the Professional Liability Policy by stating, "The Professional Liability Policy speaks for itself, otherwise denied." (DE # 10 at ¶¶ 50, 51, 54, 55, 56, 57, 58, 64).  Similarly, His House responds to many of Diamond's allegations regarding coverage under the Commercial General Liability Policy by stating, "The Commercial General Liability Policy speaks for itself, otherwise denied." (DE # 10 at ¶¶ 77, 78, 79, 80, 84).  Further, it its Affirmative Defenses, His House asserts that the action should be stayed pending resolution of underlying state action because Diamond's declaratory action is premature (DE # 10 at 8).

The Parents as Personal Representatives of the infant and the Estate of the infant have filed an Answer and Affirmative defenses wherein those Parties generally assert, *inter alia*, that the policies at issue are ambiguous (DE # 29 at 5).

---

[1] Diamond also asserts that under these facts, if any coverage were required by Diamond, it would only be as an excess insurer because His House held a separate policy with Lexington and thus pursuant to the terms of Diamond's policy, coverage only exists for liability beyond that covered by other policies with other insurers  (DE # 1 at ¶¶ 39, 56, 60, 61, 62, 63, 72).

## II.     LAW & ANALYSIS

### A.     Framework for Analysis

Federal Rule of Civil Procedure 26 (b)(1), provides in relevant part, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and further states, "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  In addition, Rule 26(c), which addresses protective orders, provides that the court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression or undue burden or expense.

Under Florida law, which governs the substantive portions of this declaratory action, the construction of an insurance policy is a question of law to be determined by the court. *E.g.*, *Jones v. Utica Mut. Ins. Co.*, 463 So.2d 1153, 1157 (Fla. 1985); *State Farm Fire & Cas. Co. v. Castillo*, 829 So.2d 242, 244 (Fla. Dist. Ct. App. 2002).  An unambiguous insurance contract must be construed according to its plain terms, without resorting to extrinsic evidence. *See Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005).  However, if, after construing the policy, the court finds that more than one interpretation is possible, it must resolve the ambiguity against the insurer who drafted the language of the insurance contract. *Auto-Owners Ins. Co. v. Anderson,* 756 So. 2d 29, 34 (Fla. 2000); *See also Travelers Ins. Co. v. Smith*, 328 So. 2d 870 (Fla. Dist. Ct. App. 1976).  In sum, if the policy provisions at issue are unambiguous, they will be enforced as written; and, if the policy provisions are ambiguous, they must be construed strictly against Plaintiff and in favor of Defendants. *See Allstate Ins. Co. v. Swain*, 921 So.2d 717, 719 (Fla. Dist. Ct. App. 2006) (quashing orders which compelled discovery concerning, *inter alia*, drafting, marketing and interpretation of insurance policy, holding

4

that construction of policy is a matter of law and if it is ambiguous, the ambiguity will be resolved against the insurer; therefore, the requested discovery was "completely unnecessary to the determination of the coverage issue."); *Accord Deni Assoc. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998).

In addition, an insurer's duty to defend an insured is determined from the allegations of the complaint brought against the insured. *Nat'l Union Fire Ins. Co. v. Lenox Liquors*, 358 So.2d 533 (Fla. 1977); *State Farm Mutual Automobile Insurance Co. v. Culver*, 576 So.2d 918 (Fla. Dist. Ct. App. 1991); *C.A. Fielland, Inc. v. Fidelity & Casualty Co. of New York*, 297 So.2d 122 (Fla. Dist. Ct. App. 1974), cert. denied, 309 So.2d 6 (Fla. 1975). Further, the duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend. *See Aetna Ins. Co. v. Borrell-Bigby Elec. Co.*, 541 So.2d 139, 141 (Fla. Dist. Ct. App. 1989) ("Florida recognizes that the duty to defend an insured is broader than the duty to indemnify."); *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So.2d 419, 421 (Fla. Dist. Ct. App. 1995). However, a duty to indemnify is "not determined by mere allegations but by the facts" in the underlying tort action adduced at trial or developed through discovery during the litigation. *Traveler's Indemnity Co. v. Royal Oak Enterprises, Inc.*, 344 F. Supp.2d 1358, 1368 (M.D. Fla. 2004).

      B.    <u>Defendant His House, Inc's Motion to Compel 30(b)(6) Deposition of Plaintiff Diamond State Insurance Company (DE # 44)</u>

In this Motion, Defendant His House seeks to compel Diamond State Insurance Company to produce a corporate representative for deposition pursuant to Federal Rule of Civil Procedure 30 (b)(6). His House asserts that it seeks to depose Diamond State's corporate representative about the (1) policies at issue in this cause; (2) the issuance and procurement of the policies, including Diamond State's underwriting considerations

in issuing the policies and setting the premiums; (3) Diamond State's interpretation of the policies, which interpretations their declaratory action is based on; (4) His House's application for the insurance policies and all information disclosed therein and in the overall application process, including the potential liability for the claim giving rise to this action; and (5) Diamond State's handling of His House's claim and ultimate denial thereof. (DE # 44 at 5). His House argues that the deposition examination topics are relevant to the instant action and therefore, with the exception of any assertions of privilege, are discoverable.

 In Response, Diamond asserts that the deposition topics identified by His House are not relevant to the current action because actions seeking an interpretation of an insurance contract are a matter of law and are resolved by the Court through the plain language of the contract. Thus, Diamond asserts that the interpretation of the policy by Diamond's corporate representative is not relevant. Further, Diamond argues that His House's request is akin to bad faith discovery which is impermissible as premature during the resolution of a coverage action, and also objects to the extent that His House seeks to discover privileged information.

 In its Reply, His House argues that because the policies at issue are ambiguous, extrinsic evidence may be considered by the Court, and thus the testimony of the Defendant's Corporate Representative regarding policy interpretation is relevant. Specifically, His House asserts that the terms "professional social service", "wrongful act" and "claims" are all ambiguous. His House also contends that it has not asserted a bad faith claim in connection with Diamond's denial of coverage, but nevertheless contends that Diamond's corporate representative's interpretation of the policy is relevant to this action.

  For the following reasons, in light of the applicable law set forth above, the undersigned concludes that deposition testimony of Diamond's corporate representative on the topics identified by His House are irrelevant to the resolution of this declaratory action. First, if the Court determines that the language of the Professional Liability Policy and the Commercial General Liability Policy are unambiguous, then the Court will resolve the dispute about coverage based upon the plain language of those policies without resort to extrinsic evidence, including any interpretation by Diamond's corporate representative regarding the language or terms of the policies. Second, in the event that the Court determines the policy language is ambiguous, Defendants will automatically prevail in the instant declaratory action. See *Koikos v. Travelers Ins. Co.*, 849 So.2d 263, 271 (Fla. 2003); *Deni Assoc. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135 (Fla. 1998) (rejecting doctrine of "reasonable expectations," stating, "There is no need for it if the policy provisions are ambiguous because in Florida ambiguities are construed against the insurer [and t]o apply the doctrine to an unambiguous provision would be to rewrite the contract ...."). Thus, under either scenario, the testimony of Diamond's corporate representative is irrelevant. *Medmarc Casualty Ins. Co. v. Ventura*, 2008 WL 4371311 *3 (S.D. Fla. Sept. 18, 2008) (finding corporate representative's deposition testimony regarding interpretation of insurance policy irrelevant).

  In addition, His House correctly notes that there has been no bad-faith claim raised in the instant action, nor are there allegations related to misrepresentation or fraud either of which might well necessitate deposing Diamond's corporate representative. Rather, in this action the only issue is whether there is coverage under the relevant policies or if, based upon the plain language of those policies, coverage, in the form of defending or indemnifying the insured, exists.

One other issue raised in the pleadings merits discussion. In its Complaint, Plaintiff Diamond has alleged that His House knew of the death of the infant prior to June 30, 2008, the date that the application for the Professional Liability Policy was completed and could have reasonably foreseen that a claim would be brought against His House prior to signing the application, and thus no coverage is available under that policy (DE # 1 at ¶¶ 65-70). Similarly, Diamond has alleged that the death of the infant occurred prior to the Commercial General Liability policy issued for the policy period of June 30, 2008 to June 30, 2009, and thus no coverage is available under that policy either (DE # 1, ¶¶ 80-82). His House argues that because of these allegations, Diamond has made "His House's knowledge the cornerstone of its declaratory action." (DE # 44 at 6). As such, His House asserts that Diamond's underwriting considerations when the policies were issued are relevant and necessitate that His House be allowed to depose Diamond's Corporate Representative on matters relevant to that issue, including the "issuance and procurement of the policies, including Diamond State's underwriting consideration in issuing the policies and setting the premiums." (DE # 44 at 5).

However, the date that His House become aware of the death of the infant and/or a potential claim related to the death is not contested by His House (DE # 10 at ¶¶ 66, 69, 83), and more importantly, is not altered by Diamond State's underwriting considerations or application process. In other words, given that there are no allegations that the dates applicable to coverage under the policy are ambiguous, then the policies will be construed according to their to plain terms, without resorting to extrinsic evidence. And, again, to the extent that there are any ambiguities, those ambiguities would be construed against Diamond. As such, it is not relevant in this declaratory judgment action, which only seeks a determination of whether there is a duty to defend or a duty

8

to indemnify, what considerations Diamond made in issuing the insurance policies to His House.

Further, Defendant's reliance on *D'Aprile v. Unum Life Ins. Co.*, 2010 WL 3340197 (M.D. Fla., 2010) for support of its position, is misplaced. *D'Aprile* is distinguishable from the case at bar because although the case involved a breach of contract action, it was not in the context of a "duty to defend" or "duty to indemnify" declaratory action. This distinction is significant because a breach of contract action may contemplate more than the interpretation of the plain language and may reach to other duties and/or obligations under the policy. Thus, a breach of an insurance contract claim may require discovery into claims handling information, guidelines, etc., for purposes of discovering whether a breach of contract actually occurred. In *D'Aprile* for example, the court determined that the defendant insurer's policy and practices related to the insurer's denial of benefits based upon the insurer's finding that plaintiff did not suffer from restrictions and limitations that restricted her ability to perform her occupation. *Id*. at * 3-4. Thus, the claims raised in that case exceeded the policy coverage issues made in this action which arise from the plain language of the policy.

In this regard, this case is more akin to *Allstate Ins. Co., v. Swain*, 921 So. 2d 717 (Fla. Dist. Ct. App. 2006), wherein the state appellate court reversed the trial court's order that the insurer produce information and documents regarding the drafting, marketing, and interpretation of its umbrella policies. The appellate court concluded that such information was completely unnecessary to the determination of the coverage issue presented in that case and held that the insurer should therefore not be required to comply with the discovery requests.

Thus, although the undersigned is aware that the threshold for determining

whether discovery is relevant is relatively low, the "proponent of a motion to compel discovery [still] bears the initial burden of proving that the information sought is relevant." *Peacock v. Merrill,* 2008 WL 176375 *8 (S.D. Ala. Jan. 17, 2008) *citing West v. Miller*, 2006 WL 2349988 (2006); *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 154, 159 (D.D.C. 1999) ("[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."). Under the facts of this declaratory judgment action, the undersigned concludes that His House has not shown that the deposition topics are relevant to the resolution of this action, and thus His House is not entitled to depose the Plaintiff's corporate representative. *See generally, Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 732 (11th Cir. 1984) (holding court can deny a motion to compel further discovery if court finds questions are irrelevant).

Accordingly, based upon the failure of His House to show how the testimony sought would be relevant to the claims and issues currently before the court in this action, His House's Motion to Compel the deposition of Diamond's corporate representative is denied.

> C. <u>Defendant His House, Inc.'s Motion for Protective Order (DE # 49); Defendant His House, Inc.'s Motion to Quash Subpoena of Kristen Glaspy or Alternatively for Protective Order (DE # 51)</u>

In these two Motions, Defendant His House seeks to limit discovery sought by Plaintiff Diamond related to conducting a 30(b)(6) deposition of His House's corporate representative and deposing one of His House's employees, Kristen Glaspy.

In the Motion for Protective Order, His House asserts that the Notice of Taking 30(b)(6) Deposition issued by Diamond identifies 13 categories of topics to be covered at the deposition, many of which, according to His House, are not relevant to the claims or defenses raised in this action and/or were already testified to either through admissions

or in the underlying state action. Specifically, His House argues that its corporate representative, Liliana Ganuza was already deposed in the underlying state action and testified as to the following subjects:

1. The death of the infant;

2. His House's investigation of the death of the infant;

3. The Report completed by His House in connection with the death of the infant;

4. His House's communications with other agency defendants regarding the death of the infant;

5. The handling of the infant's case; and,

6. The police and medical examiner reports regarding the death of the infant.

(DE # 49 at 3). Further, His House asserts that the same corporate representative was produced and testified in a deposition on November 30, 2010 in this action on the following topics:

1. Any inquiries, claims, demands and suit made by the Personal Representative to or against His House regarding the death of the infant;

2. Any inquiries, claims, or communication His House had with any of its insurance companies or agents pertaining to the death of the infant, including its conversations with the agent who procured the Policies; and

3. Any reports or investigation by His House or of which His House had first-hand knowledge related to the death of the infant.

(DE # 49 at 6). Thus, His House contends that almost all of the topics listed in Diamond's 30(b)(6) Notice have already been testified to by His House's corporate representative in either this action or the underlying action.

Similarly in the Motion for Protective Order and the Motion to Quash Subpoena of

11

**Kristen Glaspy or Alternatively for Protective Order, His House asserts that Kristen Glaspy, the His House employee assigned as the house parent on duty during the time that the infant died, was deposed in the underlying action wherein she testified regarding the care of the infant and the events surrounding the infant's death. His House therefore argues that much of the information sought by Diamond from the Corporate Representative and Ms. Glaspy related to the facts surrounding the infant's care and death is duplicative and cumulative.**

In addition, His House asserts that much of the information sought by Diamond is irrelevant to this declaratory action. Specifically, His House argues that the testimony related to the employment history or performance of the foster mother, Kristen Glaspy is not relevant to this action, and further that the care of the infant and the events surrounding his death are not relevant to resolving the declaratory action.

His House also asserts that several of the deposition topics identified in the 30(b)(6) Notice are overlybroad as drafted because they do not limit the requested information to the parties or claims involved in this action. Finally, His House asserts that lay witness testimony is not appropriate regarding the cause of death of the infant, which has not yet been determined in the state action.

Plaintiff Diamond counters, in response to both the Motion for Protective Order and Motion to Quash, that the topics identified in the Deposition Notice are relevant to this declaratory action as they seek information regarding His House's knowledge related to the care and events surrounding the death of the infant and the communications between His House and its insurance carriers (DE # # 56 at 6, 59 at 7). Also, Diamond argues that Kristen's Glaspy's qualifications and training are relevant to the declaratory action because those issues bear on whether "professional services"

were provided to the infant for purposes of determining coverage under the applicable policies (DE ## 56 at 7, 59 at 9).  Diamond further asserts that the depositions are necessary because His House has refused to respond appropriately to Diamond's Interrogatories and Requests for Admission.

Based upon a review of the record as a whole, for the following reasons, the undersigned finds that Diamond is entitled to conduct the deposition of His House's corporate representative, Liliana Ganuza, as well as the deposition of Kristen Glaspy, albeit on a limited basis.  First, it is indisputable that matters related to or central to the resolution of claims and defenses raised by the Parties in this declaratory action are discoverable.  Therefore information which may shed light on the nature or the services provided by His House are particularly germane to resolving the issue of coverage under the applicable policies and thus are relevant and discoverable in this action.  In addition, as stated above, in the "duty to indemnify" context, the facts of the underlying tort action adduced at trial or developed in discovery are central to the resolution of that claim. *Traveler's Indemnity Co. v. Royal Oak Enterprises, Inc.*, 344 F. Supp.2d 1358, 1368 (M.D. Fla. 2004).  Thus, facts related to the underlying tort action, and specifically the circumstances surrounding the death of the infant, are also relevant to resolving the "duty to indemnify" claim and are discoverable in this action.

Further, the Court notes that Plaintiff Diamond is not a party in the underlying state action and is not providing a defense for His House in that action, and thus was not present for the depositions of either Kristen Glaspy or His House's corporate representative taken in that matter.  Thus, although the undersigned agrees that additional testimony provided by His House's corporate representative and Ms. Glaspy will likely overlap and be largely duplicative of the testimony given in the underlying

13

state action, because Diamond was not able to ask questions in those depositions, and testimony from those witnesses may be relevant to the resolution of this matter, Diamond should have an opportunity to depose the witnesses on those issues. These depositions will be severely limited in duration however, since Diamond only needs to fill in the gaps left by the prior deposition. Finally, His House has failed to demonstrate that allowing Diamond to conduct depositions of the corporate representative or Ms. Glaspy is unduly prejudice or will result in undue hardship, burden or expense. The Court notes however, that to the extent that Diamond complains that His House's written responses to Diamond's discovery requests were inadequate, Diamond has failed to file a motion to compel or seek other relief from the Court regarding that issue, thus the Court does not address those claims.

Therefore, the Court concludes that a brief further deposition of Ms. Ganuza and a deposition of Ms. Glaspy are warranted. On or before Friday, January 21, 2011, Diamond may conduct a one hour deposition of His House's 30(b)(6) representative on the following limited topics:

1. The provision of care and services by His House to the infant;
2. The events surrounding the death of the Infant;
3. His House's investigation of the death of the infant;
4. Insurance Policies held by His House which may provide coverage related to the death of the infant.

In addition, on or before Friday, January 21, 2011, Diamond will be permitted to conduct a one hour deposition of His House employee, Kristen Glaspy on the following topics:

1. Qualifications training and education of Ms. Glaspy and the nature of services that she provided at His House and to the infant specifically;
2. The events leading up to and surrounding the death of the infant.

**Defendant His House shall use its best efforts in making its corporate representative and Ms. Kristen Glaspy available for deposition on or before the date set forth in this Order. If Diamond believes that additional time is needed in either scheduling the depositions and or in completing the depositions, Counsel for Diamond shall confer with Counsel for His House to reach a mutually agreeable time for the Parties to place a conference call to the chambers of the undersigned on or before the close of business on Thursday, January 20, 2011 for a telephonic hearing on the issue, and immediately contact chambers of the undersigned regarding same.**

   III.   CONCLUSION

Therefore, based upon a review of the record as a whole, and for the reasons stated above, it is

**ORDERED AND ADJUDGED** that Defendant His House, Inc's Motion to Compel 30(b)(6) Deposition of Plaintiff Diamond State Insurance Company (DE # 44) is **DENIED**. It is further

**ORDERED AND ADJUDGED** that Defendant His House, Inc's Motion for Protective Order (DE # 49) and, Defendant His House, Inc.'s Motion to Quash Subpoena of Kristen Glaspy or Alternatively for Protective Order (DE # 51) are **GRANTED**, in part. Although His House must produce a (30)(b)(6) corporate representative and Ms. Kristen Glaspy for deposition, the topics of inquiry and the length of the depositions are limited as set forth in this Order. In addition, during the depositions, Defendant His House may

**raise privilege objections, if appropriate.**

  **DONE AND ORDERED** **in chambers in Miami, Florida on January 18, 2011.**

              */s/ Andrea M. Simonton*
              **ANDREA M. SIMONTON**
              **UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**
**All counsel of record**