UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20039-CIV-UNGARO/SIMONTON

**DIAMOND STATE INSURANCE COMPANY,**

 **Plaintiff,**

**v.**

**HIS HOUSE, INC. et al.,**

 **Defendant.**
_____/

**DISCOVERY ORDER ON NON-PARTY CHILDNET INC.'S
MOTION TO QUASH SUBPOENA AND MOTION
FOR PROTECTIVE ORDER**

**Presently pending before the Court are Non-Party Childnet, Inc.'s Motion to Quash Subpoena and for Protective Order, or in the Alternative, Motion to Limit Scope of the Deposition of its Corporate Representative (DE # 46); and, Non-Party Childnet, Inc.'s Objections, Motion for Protective Order, or in the Alternative, Motion to Limit Scope of Subpoena to Produce Documents (DE # 47). The Motions have been fully briefed (DE ## 60, 61, 63, 64) and referred to the undersigned Magistrate Judge (DE # 48).**

 **I.** **BACKGROUND**

**This matter was initiated when Diamond State Insurance Company ("Diamond") filed a two count Complaint seeking a declaratory judgment with respect to its rights and obligations related to a Professional Liability Policy (Count I) and a Commercial General Liability Policy (Count II) issued to His House, Inc., ("His House") a non-profit corporation (DE # 1). The Declaratory Relief Complaint alleges that His House, Inc., was named as a defendant in an action filed in the Seventeenth Judicial Circuit, Broward County, Florida, related to the death of an infant placed at His House following removal of the child by the Department of Children and Families-Broward (DCF) from the home of**

her mother (DE # 1 at ¶¶ 7-13).  That action alleges that the infant M.C. was found deceased on February 15, 2007, some time after being wrapped in a blanket by Kristen Glaspy, the foster care mother who was employed by His House (DE # 1 ¶¶ 15, 18, 20).  The state action, which alleges wrongful death, was brought against His House by the Estate of the minor decedent and the natural parents of the child, Jossalyn D. Crawford and Michael Coley as Personal Representatives of the Estate (DE # 11 at ¶ 7).  According to the Complaint in this action, Defendant His House sought coverage in the wrongful death action from Diamond pursuant to a Professional Liability Policy and a Commercial General Liability Policy issued by Diamond to His House.  In addition, His House sought coverage from Lexington Insurance Company (Lexington) which also issued a general coverage liability policy to His House (DE # 1 ¶¶ 46, 47).  Lexington is currently providing a defense to His House in the state action, but Diamond denied His House's request for coverage in that action (DE # 1 ¶¶ 47, 48).

      Diamond now seeks a declaration from this Court that it has no duty to defend or indemnify His House for the claims brought in state court under either the Professional Liability Policy or the Commercial General Liability Policy.  Diamond has named His House, and the natural parents a personal representatives of the infant's Estate as defendants in this action.  In the Complaint, Diamond alleges that the Professional Liability Policy does not provide coverage to His House because the actions which allegedly resulted in the death of the infant do not qualify as a "professional social services" and thus is not a "wrongful act" under that policy (DE # 1 ¶¶ 50-55).  In addition, Diamond alleges that His House knew of the death of the infant prior to June 30, 2008, the date that the application for the professional liability policy was completed and could have reasonably foreseen that a claim would be brought against His House

prior to signing the application, and thus no coverage is available under that policy (DE # 1 at ¶¶ 65-70).[1]  Similarly, Diamond alleges that it does not have a duty to defend and/or indemnify His House under the Commercial General Liability Policy because the injury to the infant occurred prior to the policy period and thus no coverage is available under that policy either (DE # 1 at ¶¶ 80-86).

His House has filed an Answer and Affirmative Defenses (DE # 10).  In the Answer, His House responds to many of Diamond's allegations regarding coverage under the Professional Liability Policy by stating, "The Professional Liability Policy speaks for itself, otherwise denied." (DE # 10 at ¶¶ 50, 51, 54, 55, 56, 57, 58, 64).  Similarly, His House responds to many of Diamond's allegations regarding coverage under the Commercial General Liability Policy by stating, "The Commercial General Liability Policy speaks for itself, otherwise denied." (DE # 10 at ¶¶ 77, 78, 79, 80, 84).  Further, in its Affirmative Defenses, His House asserted that the action should be stayed pending resolution of underlying state action because Diamond's declaratory action is premature (DE # 10 at 8).

The Parents as Personal Representatives of the infant and the Estate of the infant have filed an Answer and Affirmative defenses wherein those Parties generally assert, *inter alia*, that the policies at issue are ambiguous (DE # 29 at 5).

In addition, in the underlying state Complaint, which is appended to the Declaratory Judgment Complaint filed in this action, it is alleged that Childnet Inc.

---

[1] Diamond also asserts that under these facts, if any coverage were required by Diamond, it would only be as an excess insurer because His House held a separate policy with Lexington and thus pursuant to the terms of Diamond's policy, coverage only exists for liability beyond that covered by other policies with other insurers  (DE # 1 at ¶¶ 39, 56, 60, 61, 62, 63, 72).

("Childnet"), a non-party in this action, was given custody and control of the infant by DCF after the infant was removed from her mother on or about February 6, 2007 (DE # 1 at pg. 71). According to the state Complaint, thereafter, Childnet placed the infant in the custody and control of Our Kids of Miami-Dade/Monroe, Inc., who then placed the infant with His House (DE # 1 at pg. 71). Childnet is named in the state action in counts alleging wrongful death, vicarious liability and failure to supervise (DE # 1 at pgs. 73-81).

Plaintiff in this action, Diamond, has issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Childnet (DE # 47-1) and a Subpoena to testify at a Deposition in a Civil Action directed at Childnet's corporate representative (DE # 46-1). Those subpoenas are the subject of the Motions currently at bar.

## II. PARTIES' POSITIONS

Non-Party Childnet has filed a Motion to Quash the Subpoena and for Protective Order and/or to Limit the Scope of the Deposition of its Corporate Representative seeking to limit and/or quash Diamond's subpoena to depose Childnet's corporate representative on seventeen different topics (DE # 46). Childnet argues that the topics identified in the Subpoena are irrelevant, overbroad, unduly burdensome, harassing, not limited in time and not likely to lead to the discovery of admissible evidence. Childnet also asserts that it lacks first-hand knowledge of many of the subjects identified in the Subpoena.

Childnet further asserts that on September 20, 2010, Childnet's corporate representative was deposed for over two (2) hours in the underlying litigation and that a

copy of the deposition has been proved to Diamond State Insurance.[2]  Childnet argues that it will be prejudiced if the deposition of its corporate representative is allowed to proceed in this action because the Defendants herein, which include the estate of the deceased infant, will get a "second bite at the apple" in obtaining additional testimony for the state wrongful death claim.  In the alternative, Childnet requests that the deposition of its corporate representative be strictly limited to the topics relevant to this declaratory action that may lead to the discovery of admissible evidence.

Childnet has also filed a Motion for Protective Order or in the Alternative Motion to Limit Scope of Subpoena in relation to a Subpoena to Produce Documents directed at Childnet (DE # 47). The Subpoena at issue requests a variety of documents including all files and documents concerning the care, death, investigation and reports regarding the death of the infant; communications and reports regarding the care and handling of the infant; persons involved in the care of the infant; claims and demands made by the decedent's parents or the estate of the decedent; and insurance available to any person or entity for claims resulting from the death of the infant (DE # 47-1 at 4-5).  In addition, the subpoena requests all communications and correspondence between, and any records concerning Kristen Glaspy including employment records, applications, certifications, education and background checks (DE # 47-1 at 5).

---

[2] **In its Motion to Quash, Childnet also argued that the subpoena was defective because it was issued from the United States District Court for the Middle District of Florida for a deposition to be conducted in the Southern District of Florida and thus ran afoul of Civil Rule of Procedure 45 (a)(2)(B) (DE # 46 at 5).  In its Response, Diamond contended that the subpoena was issued on the wrong style and that Diamond then reissued the subpoena on the proper form indicating that the subpoena issued from the Southern District of Florida (DE # 61 at 6).  Childnet confirmed in its Reply that Diamond corrected the procedurally deficient subpoena, and thus the undersigned deems the issue regarding the issuance of the subpoena is moot.**

In Response to both Motions, Plaintiff Diamond has asserted that the information sought from Childnet, both through the deposition of Childnet's corporate representative and the Subpoena to produce documents to Diamond, are relevant to this action and discoverable pursuant to the Federal Rules of Civil Procedure.  Specifically, Diamond asserts that Childnet has knowledge related to the placement of the infant at His House, the care of the infant, the events surrounding the infant's death due to an investigation conducted after the death of the infant, claims made relating to the death of the infant and remedial measures taken by His House during the relevant period.  In addition, Diamond argues that to the extent that Childnet asserts that certain documents are privileged, Childnet should be required to produce a privilege log.

### III.     LAW & ANALYSIS

#### A.     Framework for Analysis

Federal Rule of Civil Procedure 26 (b)(1), provides in relevant part, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and further states, "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  In addition, Rule 26(c), which addresses protective orders, provides that the court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression or undue burden or expense.

However, although Rule 26(b) applies to discovery of non-parties as well as parties in a suit, requests for non-party production of discovery materials require courts to engage in a case-specific balancing test and weigh factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by the requests and the particularity with which the documents are

described against the burden imposed on a person ordered to produce the desired information. *United Technologies Corp. v. Mazer*, 2007 WL 788877 *1 (S.D. Fla. March 14, 2007) (citing *Farnsworth v. Procter & Gamble Co.*, 758 F. 2d 1545 (11th Cir.1985)). Courts must also consider the status of a witness as a non-party when determining the degree of burden; the status of the person as a non-party is a factor often weighing against disclosure. *Id.*

It is also worth noting for purposes of the Motions at bar that a duty to indemnify is not determined by mere allegations contained in the declaratory action complaint, but by the facts in the underlying tort action adduced at trial or developed through discovery during the litigation. *Traveler's Indemnity Co. v. Royal Oak Enterprises, Inc.*, 344 F.Supp.2d 1358, 1368 (M.D. Fla.2004).  With these legal precepts in mind, the Court now turns to the Motions sub judice.

    B.    <u>Application of Law to Motions at Bar</u>

At the outset, the undersigned notes that although Childnet is a non-party in this declaratory judgment action regarding the scope of insurance coverage provided by Diamond to His House, Childnet has been named as a defendant in the underlying wrongful death state action.  The Court therefore acknowledges that Childnet has a legitimate interest in not disclosing nor providing information that is only tangentially relevant to this matter that may cause prejudice to Childnet in the underlying action. That notwithstanding, Diamond has a right to discover relevant evidence in this action from Childnet.  Thus, although pursuant to Rule 45, a Court may quash or modify a subpoena to a non-party which subjects that person to undue burden, the undersigned concludes that in weighing the interests of Diamond and Childnet, Childnet simply has not demonstrated that permitting Diamond to depose Childnet's corporate

representative will result in an undue hardship, prejudice or burden to Childnet.  Further, although Childnet argues that the its corporate representative was already deposed in the underlying action, Diamond, the Plaintiff in this action, is not a party to the state action and is not providing a defense to His House in that action.  As such, Diamond has not had an opportunity to question Childnet's corporate representative regarding the underlying facts of this case.  Similarly, for the same reasons, Diamond has the right to obtain relevant documents from Childnet and Childnet has not demonstrated that production of such documents is overly burdensome or will cause undue expense to Childnet.

On the other hand, Diamond's declaratory action only alleges that Diamond has no duty to either defend or indemnify His House on the wrongful death action based upon the interpretation of the terms contained in the insurance policies issued by Diamond to His House.  Therefore, although central to the issue of whether Diamond has a duty to indemnify His House is whether the facts surrounding the death of the infant are such that coverage arises under the policy, not all of the information sought by Diamond in its Subpoenas is relevant, and many of Diamond's requests are overbroad.  Thus, the undersigned generally limits Diamond's requests for documents and topics to be covered at the deposition of Childnet's corporate representative in the following manner:

1. **All Communications**

Diamond has requested that all communications related to the infant be produced or testified to without limiting those communications to those related to the events surrounding the death of the infant.  However, not all communications related to the infant are relevant if they have no relation to the events that gave rise to the wrongful

death action.  Thus, the undersigned limits the communications that must be produced and/or testified about to those communications related to the death of the infant or leading up to the death of the infant.  In other words, if Childnet is in possession of documents or has information related to other incidents related to the infant, those documents or information need not be provided.

### 2. Temporal Scope

Diamond has failed to provide any limitations on the temporal scope of its requests or the testimony to be covered in the deposition of the corporate representative.  Thus, to the extent that Diamond seeks information from Childnet related to the decedent infant, such testimony and/or production of documents shall be limited to the time frame directly related to the events surrounding the infant's death, beginning with the removal of the infant from her mother's home in early 2007 through the present time.

### 3. Lack of Knowledge/Responsive Documents

To the extent that Childnet's corporate representative has no knowledge on certain topics identified in Diamond's Deposition Subpoena, she may testify to that lack of knowledge at the deposition conducted by Diamond.  Similarly, if Childnet does not possess documents responsive to Diamond's Subpoena to Produce Documents (DE # 61-1), obviously Childnet need not produce those documents.  However, Childnet shall be required to produce those non-privileged documents that are in its possession that are responsive to the Subpoena, as limited by the foregoing.

### 4. Privileged Documents

To the extent that Childnet claims that certain documents are subject to a privilege, Childnet shall produce a privilege log simultaneously when it produces the

documents responsive to Diamond's Document Subpoena.

Accordingly, on or before January 31, 2011, Non-Party Childnet must produce its corporate representative for deposition in this matter at a mutually convenient time and place for the Parties in this action, and for Childnet. Base upon the fact that Childnet's deposition in the underlying action is available to the parties, the deposition in this case shall not exceed two-hours, with Defendants in this action being permitted one-half hour during that time to examine Childnet's corporate representative. The documents subpoenaed by Diamond in its Subpoena to Produce Documents (DE # 47-1), shall be produced to Diamond no later than twenty-four hours prior to the agreed-upon time for the deposition of Childnet's corporate representative.

IV.   CONCLUSION

Therefore, based upon a review of the record as a whole, and for the reasons stated above, it is

**ORDERED AND ADJUDGED** that Non-Party Childnet, Inc.'s Motion to Quash Subpoena and for Protective Order, or in the Alternative, Motion to Limit Scope of the Deposition of its Corporate Representative (DE # 46) is **GRANTED**, in part. The topics identified in the Subpoena to Testify at a Deposition in a Civil Action (DE # 46-1) issued by Diamond to Childnet, Inc., for the deposition of Childnet's corporate representative will be limited as set forth in the body of this Order. It is further

**ORDERED AND ADJUDGED** that Non-Party Childnet, Inc.'s Motion for Protective Order, or in the Alternative, Motion to Limit Scope of Subpoena to Produce Documents (DE # 47) is **GRANTED**, in part. Childnet shall produce responsive, non-privileged documents and privilege log to Diamond, as limited above, in the manner and

time frame set forth in the body of this Order.

**DONE AND ORDERED** in chambers in Miami, Florida on January 18, 2011.

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
All counsel of record